This opinion was filed for record
at 8:00 AM on Sept 25, 2014

~~Ronald R. Carpenter~~
Ronald R. Carpenter
Supreme Court Clerk

**FILE**
IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE **SEP 2 5 2014**

CHIEF JUSTICE

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, | |
| Respondent, | No. 85809-8 |
| v. | En Banc |
| WILLIAM GLEN SMITH, | Filed **SEP 2 5 2014** |
| Petitioner. | |

J.M. JOHNSON, J.*—This case presents the issue of whether sidebar conferences implicate a criminal defendant's right to a public trial under article I, section 22 of the Washington Constitution and require a conviction to be overturned. William Glen Smith claims that the trial court violated his public trial right when courtroom limitations led to holding "sidebar" conferences in a hallway outside the courtroom on the record with counsel present. Smith argues that these sidebars were courtroom closures subject to *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995). Because the trial

---

*Justice James M. Johnson is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

court did not perform a *Bone-Club* analysis, he requests that this court reverse his conviction and grant him a new trial.

We hold that sidebars do not implicate the public trial right. This court uses the experience and logic test to evaluate whether a particular proceeding implicates the public trial right. *State v. Sublett*, 176 Wn.2d 58, 73, 292 P.3d 715 (2012). Sidebars are not subject to the public trial right under the experience and logic test because they have not historically been open to the public and because allowing public access would play no positive role in the proceeding. Although the practice of holding sidebars in a hallway outside the courtroom is unusual, the form of these hallway conferences was consistent with the role traditionally filled by sidebars and so they do not implicate the public trial right. We affirm the Court of Appeals.

FACTS AND PROCEDURAL HISTORY

Smith was charged by information with 10 counts of third degree rape and fourth degree assault with a sexual motivation. Clerk's Papers (CP) at 4-8. The information was later amended to add one count of second degree perjury. *Id.* at 56-60. The State brought charges after Smith compelled his niece to enter into a contract purportedly waiving her right to refuse sex or

complain civilly or criminally about any sex acts he wanted to perform with her for 10 years.[1]

The Cowlitz County courthouse has a peculiar layout making it difficult to hold sidebar discussions between counsel and the trial judge outside the jury's hearing. Suppl. Br. of Pet'r, App. A. To avoid contaminating the jury with potentially prejudicial rulings on evidentiary objections, these sidebar discussions occur in a hallway outside the courtroom. *Id.* The judge throws a switch before each hallway sidebar that deactivates the recording equipment in the courtroom and activates a camera and microphone in the hallway to keep these sidebars on the record. *Id.* During Smith's trial, 13[2] hallway "sidebar"[3] conferences occurred. *Id.* App. A at 2. After the trial, the jury

---

[1] The contract also contained a liquidated damages clause provided that if the victim ever denied consent, she would have to pay "the Pro-Rated Balance of $10,000.00 ten thousand dollars minus $1,000.00 one thousand dollars per year." Ex. 5.

[2] The dissent agrees that the sidebar to discuss a time for recess does not implicate the public trial right. Dissent at 4 & n.3. This position is inconsistent and comes dangerously close to one of the "ministerial" proceedings that are allowed under the legal-factual test rejected in *Sublett*. The dissent cites Justice Stephens' *Sublett* concurrence for the proposition that the public trial right does not attach to "brief sidebars to allow counsel to raise concerns that may need to be taken up outside the jury's presence." *Id.* at 2 n.2. All sidebars have to take place outside the presence of the jury because hearing the content would expose the jury to potentially prejudicial evidence.

[3] Although the parties disagreed about whether to characterize these hallway conferences as "sidebars" or something else, we analyze them as sidebars here because that is the role these conferences played in the trial. The analysis would not change for on the record evidentiary conferences in chambers.

convicted Smith on four counts of third degree rape and one count of second degree perjury.

On direct appeal Smith alleged, among other things, that 12 of the hallway sidebars violated his public trial right because the trial court failed to conduct a *Bone-Club* analysis. Pet. for Review at 4. Division Two of the Court of Appeals held that the hallway sidebars did not implicate Smith's public trial right because they "involved purely ministerial and procedural matters." *State v. Smith*, noted at 159 Wn. App. 1011, 2011 WL 55972, at *4. The Court of Appeals affirmed Smith's conviction but remanded only for resentencing. 2011 WL 55972, at *12. We accepted review solely on the public trial rights issue and affirm the conviction with a differing analysis. *State v. Smith*, 176 Wn.2d 1031, 299 P.3d 20 (2013).

ISSUE

The issue is whether sidebar conferences on evidentiary matters in a hallway outside the courtroom implicate the public trial right.[4]

---

[4] The parties also disputed whether Smith invited this alleged error. It is not necessary to address that issue here because we find the constitutional right does not attach to traditional sidebars, like those here.

ANALYSIS

Whether a defendant's right to a public trial has been violated is a question of law, subject to de novo review on direct appeal. *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005) (citing *Bone-Club*, 128 Wn.2d at 256).

Lower courts in this state continue to struggle with the open courts doctrine derived from article I, section 22. In *Sublett*, Chief Justice Madsen laid out a helpful analytical framework that guides our analysis of public trial right cases. We

> begin by examining . . . whether the public trial right is implicated at all . . . then turn to the question whether, if the public trial right is implicated, there is in fact a closure of the courtroom; and if there is a closure, whether . . . the closure was justified.

176 Wn.2d at 92 (Madsen, C.J., concurring). Application of these rules and framework in this case should provide guidance to trial courts in future cases. We adopt this three-step framework here.[5]

---

[5] *Sublett* could be read as requiring a two part analysis, first asking whether the public trial right attaches and then turning to whether there was a violation of the right. *See State v. Wilson*, 174 Wn. App. 328, 298 P.3d 148 (2013). However, the question of whether a closure occurred is a distinct question from whether that closure was justified because a closure after the trial court conducts a *Bone-Club* analysis does not violate the right. *State v. Frawley*, No. 80727-2, slip op. at 7 (Wash. Sept. 25, 2014) (lead opinion). In both *State v. Njonge*, No. 86072-6 (Wash. Sept. 25, 2014) and *State v. Koss*, No. 85306-1 (Wash. Sept. 25, 2014), the defendants failed to prove that a closure occurred at

1. *Does the proceeding at issue implicate the public trial right?*

The proceeding at issue in this case is a sidebar conference held in a hallway outside the courtroom. For some time our Court of Appeals drew a distinction between legal and ministerial proceedings on one hand and adversarial and factual proceedings on the other.[6] *Sublett*, 176 Wn.2d at 72. In this case, the Court of Appeals used the legal-factual test. *Smith*, 2011 WL 55972, at *4. While Smith's petition was pending in this court, we decided *Sublett*, which rejected the old legal-factual distinction in favor of the experience and logic test to determine whether the proceeding at issue implicates the public trial right. 176 Wn.2d at 73 (citing *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 8-10, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

"The first part of the test, the experience prong, asks 'whether the place and process have historically been open to the press and general public.' The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id.* (citations omitted) (quoting *Press-Enter.*, 478 U.S. at 8). The guiding principle is "whether

---

all, ending the inquiry before we reached the question of whether a *Bone-Club* analysis occurred to justify the alleged closures.

[6] As shorthand, we label it here the "legal-factual test."

openness will 'enhance[] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" *Id.* at 75 (alteration in original) (quoting *Press-Enter. Co. v. Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984)).

a. The Experience Prong

Sidebar conferences have historically occurred outside the view of the public. *See, e.g., State v. Swenson*, 62 Wn.2d 259, 279, 382 P.2d 614 (1963) (sidebar to address witness concerns about witness's comfort while testifying); 2 BYRON K. ELLIOTT & WILLIAM F. ELLIOTT, A TREATISE ON GENERAL PRACTICE CONTAINING RULES AND SUGGESTIONS FOR THE WORK OF THE ADVOCATE IN THE PREPARATION FOR TRIAL, CONDUCT OF THE TRIAL AND PREPARATION FOR APPEAL 714 (1894) (advocating offers of proof in response to evidentiary objections in writing or otherwise outside the jury's hearing); JAMES W. JEANS, TRIAL ADVOCACY § 14.7, at 355 (1975) (advocating use of sidebar conferences as the preferred practice to address issues discreetly outside the hearing of the jury); *see also In re Det. of Ticeson*, 159 Wn. App. 374, 384-86, 246 P.3d 550 (2011) (abrogated for use of the legal-factual test). The defendant in *Ticeson* invoked his public trial right to challenge an in-chambers conference on the admissibility of "certain deposition testimony."

*Ticeson*, 159 Wn. App. at 378. In rejecting the defendant's claim, the *Ticeson* court noted that

> In the case of sidebar discussions, issues arising with the jury present would always require interrupting trial to send the jury to the jury room, often located some distance from the courtroom, thereby occasioning long delays every time the court wishes to caution counsel or hear more than a simple "objection, Your Honor." This would do nothing to make the trial more fair, to foster public trust, or to serve as a check on judges by way of public scrutiny.

*Id.* at 386 n.38. The court reasoned that the "public trial right is not served by such a reading, and the ability of judges [to run orderly courtrooms] would be greatly hindered without a corresponding public benefit." *Id.* at 386.[7]

Smith offers no effective response to this history or the practical difficulties in extending our public trial jurisprudence to sidebar conferences on evidence.[8] Without any evidence the public has traditionally participated

---

[7] While Smith alleges a violation of his article I, section 22 public trial right rather than section 10, the two are closely linked. *Bone-Club*, 128 Wn.2d at 259 ("The section 10 guaranty of public access to proceedings and the section 22 public trial right serve complementary and interdependent functions in assuring the fairness of our judicial system." (citing CONST. art. I, § 10)). Sidebars occur in both criminal and civil trials. While some civil trial proceedings implicating section 10 might be different from the section 22 criminal case before us now, sidebars are not traditionally open in either civil or criminal trials.

[8] The dissent downplays the inconvenience of sending the jury out of the courtroom "approximately four times a day." Dissent at 6. But neither Smith nor the dissent can point to any case holding that sidebar conferences to address speaking objections to evidence during trial are unconstitutional. Such a holding would be unprecedented and

-8-

in sidebars, the experience prong cannot be met. Instead, Smith relies on several examples that are easily distinguishable.

In *Bone-Club*, 128 Wn.2d at 256, this court held that a pretrial suppression proceeding implicated the public trial right. In *Bone-Club*, the court closed the courtroom during the testimony of an undercover police officer to protect the confidentiality of his undercover activities. *Id.* at 257. Sidebars are different. Pretrial suppression hearings rule on issues with a significant impact in the community.[9] Proper sidebars, on the other hand, deal with the mundane issues implicating little public interest. *Wise*, 176 Wn.2d at 5.[10]

In *State v. Easterling*, 157 Wn.2d 167, 137 P.3d 825 (2006), the court closed the courtroom during a codefendant's combined motion to sever and dismiss. *Id.* at 172. The hearing involved discussion about whether the state

---

extreme. This is not merely "bow[ing] to convenience;" it is a proper application of the experience and logic test to a prolific and historic practice. *Id.*

[9] One example is whether a police search violated a defendant's privacy rights under article I, section 7 of the Washington State Constitution.

[10] We caution that merely characterizing something as a "sidebar" does not make it so. To avoid implicating the public trial right, sidebars must be limited in content to their traditional subject areas, should be done only to avoid disrupting the flow of trial, and must either be on the record or be promptly memorialized in the record. Whether the event in question is actually a sidebar is part of the experience prong inquiry and is not subject to the old legal-factual test.

had acted in bad faith. *Id.* & n.7. The proceeding at issue in *Easterling* was simply not akin to a sidebar. The closure in that case clearly implicated Easterling's rights because of the appearance of impropriety. Courts have a strong "interest in protecting the transparency and fairness of criminal trials." *Id.* at 178. The proceeding in *Easterling* "undermined the fairness of the process" because the defendant and his attorney were excluded from the pretrial hearing along with the rest of the public. *Id.* In this case, Smith's counsel was present at and participated in every sidebar.

Smith also cites *Rovinsky v. McKaskle*, 722 F.2d 197, 198 (5th Cir. 1984). In that case, the Fifth Circuit reversed a conviction where the trial judge heard arguments in chambers on motions to limit the scope of cross examination of two witnesses. First, the Fifth Circuit did not employ the experience and logic test in concluding the motion hearing should have been conducted in open court. Second, even if the *Rovinsky* court correctly concluded that the public trial right attached to that hearing, there is an important difference between the type of sidebars here—contemporaneously addressing speaking objections throughout trial—and the motions in *Rovinsky*. The motions concerned two specific witnesses and were brought before trial commenced but not considered until both witnesses had provided

direct testimony. *Id.* at 199. Like *Easterling*, the proceeding in *Rovinsky* is not analogous to the sidebars here.[11] Third, the *Rovinsky* court expressly stated that "[s]idebar conferences in which the defendant's counsel participates without objection do not violate the right to a public trial." *Id.* at 201. The public trial right is, among other things, a prophylactic measure allowing the public to observe the process and weigh the defendant's guilt or innocence for itself.[12] *Id.* at 201-02. The sidebars in this case would not aid the public in assessing Smith's guilt or innocence. Finally, the sidebars here are further distinguishable from the motions in *Rovinsky* because there is a video and audio record. Any inquiring member of the public can discover exactly what happened at sidebar. Smith has not satisfied the experience prong.

---

[11] A helpful analogy is the difference between setting ground rules prior to a baseball game versus the umpire calling balls and strikes during the game. Pretrial motions set the rules of a trial while a judge's rulings on evidence determine whether a party has strayed outside those rules.

[12] We in no way question the importance of the public trial right in Washington. *Rovinsky* applies to the federal public trial right. Our founders enshrined the public trial right in article I of our state constitution. The right to a public trial is a core safeguard to the justice system and fair trials, and it is an important check on the judiciary. *Wise*, 176 Wn.2d at 5-6.

b.  The Logic Prong

The logic prong asks "'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-Enter.*, 478 U.S. at 8).  Smith articulates no specific interest that is served by ensuring that the public is privy to a sidebar, and it is difficult to conceive of one.  Indeed, forcing the jury in and out of the courtroom repeatedly whenever an objection is made at trial would be a problematic practice.[13]  But more importantly, evidentiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness.  *See Sublett*, 176 Wn.2d at 77.  Critically, the sidebars here were contemporaneously memorialized and recorded, thus negating any concern about secrecy.  The public was not prevented from knowing what occurred.  Nothing positive is added by allowing the public to intrude on the huddle at the bench in real time.  *Sublett*, 176 Wn.2d at 97-98 (Madsen, C.J., concurring) (quoting *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 598 n.23, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980) (Brennan, J., concurring)).

---

[13] While we assume that juries follow their instructions, we must also acknowledge that juries are made of imperfect human beings subject to the annoyance of constantly marching in and out of the courtroom.

No logic compels the conclusion that sidebars must be conducted in open court.

Applying our own logic to the situation does not advance Smith's argument. Many lawyers fail to fully appreciate the complexities of the hearsay rule and its many exceptions. For the public, discussions on hearsay and the prior inconsistent statement exception are practically a foreign language. Such rulings are exclusively within the province of the trial judge under ER 104(a). Nothing is added to the functioning of the trial by insisting that the defendant or public be present during sidebar or in-chambers conferences. Indeed, the trial court did what ER 104(c) requires in the interest of justice by preventing the jury from hearing discussions on potentially inadmissible evidence. The logic prong weighs against Smith.

Sidebars have traditionally been held outside the hearing of both the jury and the public. Because allowing the public to "intrude upon the huddle" would add nothing positive to sidebars in our courts, we hold that a sidebar conference, even if held outside the courtroom, does not implicate Washington's public trial right.[14] *See supra* p. 11.

---

[14] This holding is simply common sense. In a sidebar the judge and counsel necessarily speak in hushed voices to prevent the jury from overhearing potentially prejudicial information. Spectators in the pews behind counsel tables are often farther away from the

Finding that the sidebars or evidentiary conferences in this case did not implicate the public trial right, the court need not reach the remaining three steps in this case. However, we provide the following guidance to assist reviewing courts in the future.

2. *Was there a closure?*

A closure occurs "when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *State v. Lormor*, 172 Wn.2d 85, 93, 257 P.3d 624 (2011). This court has adopted the experience and logic test to determine whether a closure occurred in the absence of an express closure on the record. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 28-29, 296 P.3d 872 (2013). When no closure exists, the trial court judge "possesses broad discretion [including] the power to remove distracting spectators" and to provide orderly conduct to ensure a fair proceeding. *Lormor*, 172 Wn.2d at 93-94 (applying RCW 2.28.010).

The court need not reach this step if the answer to the first question is negative. Because the sidebar conferences in this case do not implicate the public trial right, the court need not determine whether they were closed.

---

bench than the jury. If the jury cannot hear a sidebar, then the public almost certainly cannot hear it either.

-14-

3. *Was the closure justified?*

A closure unaccompanied by a *Bone-Club* analysis on the record will almost never be considered justified. A trial court that properly conducts a *Bone-Club* analysis and enters a finding on the record that the closure is justified will almost never be overturned because such a determination is subject to review for abuse of discretion. *Wise*, 176 Wn.2d at 11. When a court fails to conduct an express *Bone-Club* analysis a reviewing court may examine the record to determine if the trial court effectively weighed the defendant's public trial right against other compelling interests. *Momah*, 167 Wn.2d at 156. However, we have said that "it is unlikely that we will ever again see a case like *Momah* where there is effective, but not express compliance with *Bone-Club*" and thus far, our prediction has been correct. *Wise*, 176 Wn.2d at 15.

Again, because the sidebar conferences in this case do not implicate the public trial right, the court does not consider whether the alleged closure was justified.

CONCLUSION

This court accepted review on several public trial rights cases this term to clarify the law in this field. We have partially adopted the framework

advocated by Chief Justice Madsen in *Sublett*. The steps of this public trial right framework are: (1) Does the proceeding at issue implicate the public trial right? (2) If so, was the proceeding closed? And (3) If so, was the closure justified?

Applying the experience and logic test in the first step to this case, we find that sidebars such as the ones presented in this case have not traditionally been open to the public and injecting the public into sidebars would have no positive impact. Accordingly, sidebar conferences do not implicate the public trial right.

Because reasonable and traditional sidebars used to avoid interruption of a trial do not implicate the public trial right, the court need not reach the remaining two steps of the public trial right framework here. We affirm the Court of Appeals with the caveat that the legal-factual test it relied on was rejected in *Sublett*.

J. M. Johnson, J. P.T.

WE CONCUR:

Madsen, C.J.

Johnson, J.

Stephens, J.

González, J.

No. 85809-8

WIGGINS, J. (concurring in result)—I agree with the result reached by the majority opinion, but I write separately because our open courts jurisprudence has become increasingly complex and confusing. We adopted the logic and experience test as the method by which judges can determine whether a particular phase of trial is subject to the Washington Constitution's command that justice shall be administered openly. CONST. art. I, §§ 10, 22; *State v. Sublett*, 176 Wn.2d 58, 292 P.3d 715 (2012). But this case and other pending cases reveal that it is difficult and confusing, if not impossible, to draw clear lines between trial procedures that should be open and those that can be closed.

We embarked on this journey with the best of intentions: to invigorate our open courts jurisprudence and to protect criminal defendants' constitutional right to an open and public trial. But this experience teaches that there are many types of closures at different points in trial, and most defy easy classification under the logic and experience test. Moreover, it remains near impossible to predict whether the public trial right attaches to a particular proceeding, even when proceedings are identical or closely analogous to our prior case law. Most problematically, we have resorted to the logic and experience test to reduce the right to a public trial, carving out exceptions to the public trial right for various steps in the trial. We should take this opportunity to

clarify Washington's open courts jurisprudence to lend guidance to judges and practitioners facing these questions on a daily basis.

Accordingly, I would reject the logic and experience test and instead hold that all trial proceedings are presumed open. In order to close a phase of trial, a trial judge must conduct a *Bone-Club*[1] analysis on the record. And on appeal, I would require a defendant to have objected at trial or to satisfy RAP 2.5(a)(3) in order to assert the right to a public trial.

## ANALYSIS

Numerous decisions from this court attempt to delineate the contours of the public trial right. In this quest, our cases have applied the following principles and rules. We employ the logic and experience test to determine whether a proceeding implicates the public trial right. *Sublett*, 176 Wn.2d at 72-73. If we find that experience and logic counsel that a particular process in the trial must be open, the following draconian rules apply:

- In order to close the courtroom for that process, the trial court must conduct a *Bone-Club* analysis before closure;

- the defendant need not object to the closure or the failure to conduct a *Bone-Club* analysis, *State v. Wise*, 176 Wn.2d 1, 6, 288 P.3d 113 (2012);

- closing the courtroom without conducting a *Bone-Club* analysis is considered "structural error," and the defendant is automatically entitled

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

to a new trial without any showing of prejudice, *Wise*, 176 Wn.2d at 13-14;

- the issue can be raised for the first time on appeal or even in a postappeal collateral attack on a conviction through a personal restraint petition, *see In re Pers. Restraint of Morris*, 176 Wn.2d 157, 161, 288 P.3d 1140 (2012).

Having adopted these onerous principles, we are constrained by the doctrine of stare decisis to continue to adhere to them unless our decisions adopting these principles are incorrect and harmful. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 25, 296 P.3d 872 (2013) (quoting *City of Federal Way v. Koenig*, 167 Wn.2d 341, 346-47, 217 P.3d 1172 (2009)). This case illustrates why the logic and experience test is incorrect and harmful.

I. Overview of the Logic and Experience Test

In *Bone-Club*, 128 Wn.2d 254, we articulated a five-step inquiry that a court must consider before closing proceedings to the public.[2] But soon after *Bone-Club*, it

---

[2] The five step *Bone-Club* analysis is:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

became apparent that trial judges did not consider routine procedures to be closures and so did not conduct a *Bone-Club* analysis before using sealed questionnaires or closing parts of voir dire.

In an effort to provide guidance to trial and appellate judges, a plurality of this court adopted the logic and experience test for determining whether the public trial right attaches to a particular proceeding. *Sublett*, 176 Wn.2d at 73. The *Sublett* plurality borrowed the "experience and logic test" from a 1986 United States Supreme Court case, *Press-Enter. Co. v. Superior Court*, 478 U.S. 1, 13-14, 106 S. Ct. 2735, 92 L. Ed. (1986), finding the test to be desirable because it allows the trial court "to consider the actual proceeding at issue for what it is, without having to force every situation into predefined factors." *Sublett*, 176 Wn.2d at 73.

Consistent with its name, the experience and logic test has two parts. The experience prong determines "whether the place and process have historically been open to the press and general public." *Press*, 478 U.S. at 8. The logic prong determines "whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* If the answer to both questions is yes, the right to public trial attaches and the court must analyze the proposed closure using the five *Bone-Club* factors. *Sublett*, 176 Wn.2d at 73.

---

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club,* 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry,* 121 Wn.2d 205, 210–11, 848 P.2d 1258 (1993)).

4

II. Logic and Experience Test Is Flawed

The logic and experience test is flawed because it fails to account for article I, section 10's uniquely strong mandate for openness at *every* stage of a judicial proceeding. Moreover, it categorically permits closures in certain types of proceedings without considering the effect that such closures have on the open administration of justice in that particular case.

*A. Fails to account for our constitution's unique emphasis on open proceedings*

Washington is one of a number of states whose constitutions (unlike the United States Constitution) explicitly guarantee the open administration of justice.[3] Article I, section 10 of our constitution commands, "Justice in all cases shall be administered openly, and without unnecessary delay." The special emphasis on open court proceedings renders the Washington Constitution arguably more stringent than its federal counterpart, and our court's decisions have consistently emphasized the value of open administration of justice. *See, e.g., Wise*, 176 Wn.2d at 5; *State v. Lormor*, 172 Wn.2d 85, 90-91, 257 P.3d 624 (2011).

The logic and experience test fails to account for the text and function of article I, section 10. It is a test developed by federal courts with the United States Constitution in mind. It has little applicability to our constitution, which mandates that justice in all cases be administered openly. Moreover, we have recognized that the purpose of article I, section 10 is to "'ensure a fair trial, to remind the officers of the court of the importance of their functions, to encourage witnesses to come forward,

---

[3] The United States Constitution never mentions open courts. Instead, the right to a public trial is implied in the First Amendment and made explicit in the Sixth Amendment. U.S. CONST. amends. I, VI ("the accused shall enjoy the right to a speedy and public trial").

and to discourage perjury.'" *State v. Strode*, 167 Wn.2d 222, 226, 217 P.3d 310 (2009) (quoting *State v. Brightman*, 155 Wn.2d 506, 514, 122 P.3d 150 (2005)). But, applying the logic and experience test, we have drawn increasingly arbitrary lines delineating the universe of proceedings to which the public trial right attaches without considering whether our decisions further these goals. Indeed, public trial values are implicated when counsel and the court meet privately to discuss jury instructions, to answer a question from the jury, and to argue and rule on evidentiary issues. And yet, a majority of this court holds that the right to public trial did not extend to an in-chambers conference to discuss a question from a deliberating jury regarding jury instructions (*Sublett*, 176 Wn.2d at 147), nor to an in-chambers discussion of jury instructions prior to deliberations (*State v. Koss*, No. 85306-1 (Wash. Sept. 25, 2014)), nor to the 12 sidebar conferences here that involved the exclusion of testimony and evidence (majority at 2). As Justice Owens explains in her dissent, discussion over the admissibility of key evidence is of public interest and, ultimately, could determine the outcome of the case. Dissent at 8. Without openness, the public is left to wonder why certain evidence was excluded; "[l]ogically, it follows that the public's trust in our justice system will weaken." *Id.* at 9. We should not continue to adhere to a test that does not further our constitution.

  *B. Permits categorical closures of certain proceedings*

  The guiding principle for determining whether the public trial right should attach is "whether openness will 'enhance[] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'" Majority at 7 (alteration in original) (internal quotation marks omitted) (quoting *Sublett*, 176

6

Wn.2d at 75). Unfortunately, this principle has been honored more in its breach than in its observance. We have held that the right to public trial always attaches to suppression hearings (*Bone-Club*, 128 Wn.2d 254), hearings on pretrial motions to sever (*State v. Easterling*, 157 Wn.2d 167, 137 P.3d 825 (2006)), and voir dire (*In re Pers. Restraint of Orange*, 152 Wn.2d 795, 100 P.3d 291 (2004)). But it never attaches to in-chambers conferences to discuss jury instructions (*Koss*, slip op. at 7-8), in-chambers conferences to discuss questions from juries (*Sublett*, 176 Wn.2d 58), or the *Smith* trial sidebars. But never have we explained why openness in proceedings that we have deemed subject to the constitutional open trial right protects the values of an open trial to a greater extent than would openness in proceedings that we have held are not subject to the constitutional open trial right.

Not all cases proceed identically. Here, there were 12 sidebars involving important and substantive evidentiary rulings that almost certainly affected the outcome of the case. For instance, as a result of sidebar discussions, the court admitted Smith's statement to police that the sex was consensual as self-serving hearsay; admitted Smith's written statement, which was prepared by police and then adopted by Smith; ruled that the treating physician could testify as to the alleged victim's identification of the perpetrator; admitted nude photos of the alleged victim and sexual items found by the detective in Smith's residence; and ruled that the prosecutor could ask Smith if he told his wife he did not sleep with the alleged victim to show that Smith lied. *See* dissent at 2-3. Holding private discussions over evidence and testimony does not foster trust in the judicial system and does not remind participants of their role in the judicial system; "[t]he proper forum for argument on

7

these issues is in open court." *Id.* at 8. Indeed, what if in a future case there are 20, or 50, sidebars? What if the sidebars involve suppression of a key piece of evidence? The logic and experience test is incorrect because it places categorical limits on openness that might bar future requests for access to administration of justice simply because the closure involved a type of proceeding. If we continue to close the courtroom one proceeding after another, we will diminish open access to courts and court records.

III.   Logic and Experience Test Is Harmful

The logic and experience test is harmful because it fails to provide much-needed guidance to judges, attorneys, and defendants. The conflicting majority and dissenting opinions show that reasonable minds can differ on what constitutes "logic" and "experience." Indeed, the test is difficult to apply on any principled basis and so vague that the result of applying it can easily appear contrived. In addition, future applications of the test will almost certainly lead to further restrictions on our commitment to the open administration of justice because history often leans in favor of permitting the closure.

*A. Fails to provide guidance*

In the 15 years since *Bone-Club,* our courts have vacated dozens of convictions in cases where no *Bone-Club* analysis was performed.[4] In the wake of these

---

[4] *See, e.g., In re Pers. Restraint of D'Allesandro,* 178 Wn. App. 457, 314 P.3d 744 (2013); *State v. Jones,* 175 Wn. App. 87, 303 P.3d 1084 (2013); *Morris,* 176 Wn.2d 157; *Wise,* 176 Wn.2d 1; *State v. Paumier,* 176 Wn.2d 29, 288 P.3d 1126 (2012); *Strode,* 167 Wn.2d 222; *Easterling,* 157 Wn.2d 167; *Brightman,* 155 Wn.2d at 506; *Orange,* 152 Wn.2d 795; *State v. Hummel,* 165 Wn. App. 749, 266 P.3d 269 (2012); *State v. Njonge,* 161 Wn. App. 568, 255 P.3d 753 (2011), *review granted in part,* 176 Wn.2d 1031 (2013); *State v. Tinh Trinh Lam,* 161

reversals, Washington judges and practitioners seek guidance. Unfortunately, we have offered them a test that provides little clarity, as evidenced by the persistent uncertainty around whether the public trial right attaches to a particular proceeding.

In 2012, this court reviewed a number of public trial cases in which jurors had been questioned individually in chambers. *Wise*, 176 Wn.2d 1; *State v. Paumier*, 176 Wn.2d 29, 288 P.3d 1126 (2012). We concluded that a defendant's right to a public trial applies to the jury selection process. *Wise*, 176 Wn.2d at 11-13; *Paumier*, 176 Wn.2d at 34-35. But, when confronted with an arguably analogous case, we came to a different conclusion. The lead opinion in *Slert* finds that the public trial right does not attach to pre-voir-dire in-chamber discussions about jurors' answers to questionnaires designed to evaluate the jurors' fitness to serve. *State v. Slert*, No. 87844-7, slip op. at 8 (Wash. Sept. 25, 2014). The *Slert* dissent, however, points out that several jurors were dismissed for cause after filling out the questionnaire, indicating that this was voir dire and not "a *precursor* to voir dire." *Slert*, slip op. at 1 (dissent) (emphasis added). Arguably, the logic and experience test should have been easily applied to *Slert* under our past precedent. Like *Wise* and *Paumier*, *Slert* involved erroneous closure of a portion of the jury selection process—specifically, in-chambers discussions that resulted in jurors being excused for cause based on their answers to questions. *Cf. Wise*, 176 Wn.2d 1; *Paumier*, 176 Wn.2d 29.

---

Wn. App. 299, 254 P.3d 891 (2011), *review granted*, 176 Wn.2d 1031 (2013); *State v. Leyerle*, 158 Wn. App. 474, 242 P.3d 921 (2010); *State v. Bowen*, 157 Wn. App. 821, 239 P.3d 1114 (2010); *State v. Waldon*, 148 Wn. App. 952, 202 P.3d 325 (2009); *State v. Sadler*, 147 Wn. App. 97, 193 P.3d 1108 (2008); *State v. Erickson*, 146 Wn. App. 200, 189 P.3d 245 (2008); *State v. Duckett*, 141 Wn. App. 797, 173 P.3d 948 (2007); *State v. Frawley*, 140 Wn. App. 713, 167 P.3d 593 (2007), *review granted*, 176 Wn.2d 1030 (2013).

If "experience" teaches us anything, it is that there is no clear, meaningful way to define trial procedures, such as the jury selection process, thus rendering even "easy" cases difficult. *See, e.g., State v. Wilson*, 174 Wn. App. 328, 298 P.3d 148 (2013) (right does not attach to excusal of jurors for illness related reasons because this is pretrial juror excusal, not voir dire). *But see State v. Jones*, 175 Wn. App. 87, 303 P.3d 1084 (2013) (public trial right attached to court recess during which the court clerk randomly selected four alternate jurors); *State v. Tinh Trinh Lam*, 161 Wn. App. 299, 254 P.3d 891 (2011) (public trial right attached to questioning of sworn-in juror because process was procedurally similar to and conducted for the same purpose as voir dire), *review granted*, 176 Wn.2d 1031 (2013). Indeed, in another recent case involving jury selection, the court held that the public trial right did not attach to parties' use of peremptory and for-cause challenges at a sidebar conference. *State v. Love*, 176 Wn. App 911, 918, 309 P.3d 1209 (2013). The court distinguished voir dire—the questioning of juries—from the exercise of peremptory and for-cause challenges and reasoned that, historically, challenges are not made in public.[5] *Id.* The court also held under the logic prong that exercising challenges to excuse jurors in open court did not further the goals of the public trial right. *Id.* These cases demonstrate that it remains near impossible to predict whether the public trial right attaches, even when proceedings are closely analogous to our prior case law.

---

[5] Instead of characterizing the closure as a sidebar closure, the court focused on the substantive actions taken at the sidebar—i.e., the exercise of challenges to excuse jurors. *Love*, 176 Wn. App. at 918.

Applying the logic and experience test to new situations has proved equally difficult. The majority and dissenting opinions in the current case demonstrate the difficulties associated with identifying what constitutes "experience and logic" under the test. Both opinions apply the test to arrive at different conclusions. The majority reasons that under the experience prong, sidebars have historically and necessarily included counsel but excluded the public and the defendant. Majority at 7. Moreover, sidebars deal with mundane issues implicating little public interest. *Id.* at 9. Under the logic prong, neither the defendant nor the public has a right to be present during in-chambers or bench conferences because they add nothing to the discussion. *Id.* at 11-12. Thus, the majority holds that sidebars do not implicate the public trial right.

The dissent reaches the opposite conclusion, reasoning that under the experience prong, the sidebars here involved discussion of important evidentiary issues, and many judges discuss evidentiary matters in open court. Dissent at 5. The dissent argues that logic dictates that whether a key piece of evidence is admitted or not can determine the outcome of a case. *Id.* at 8. Accordingly, the dissent concludes that it is important to make this process open to the public. *Id.* If the same judges who adopted the logic and experience test cannot apply it consistently in a simple case, the test is unworkable and harmful; we should overrule our prior case law.

Our decisions in these cases provide few answers and raise more questions. In this case, neither a party nor a member of the public objected to the sidebar process. But what will we do when, in a high profile criminal prosecution, a news media reporter asks to be included in the sidebar? We are deciding here that sidebars are not subject to the public trial right; presumably the reporter's request will be denied.

Or what if, as unlikely as it seems, the trial judge makes biased or improper statements during the sidebar, knowing that the sidebar is not public? Or what if sidebars result in consistently one-sided rulings, and a courtroom observer asks that all further sidebars be made public? What if there is absolutely no record of what was discussed at sidebar?

The logic and experience test is harmful because it adds to the confusion rather than providing clear guidance to trial and appellate judges. A recent law review article remarks that trial judges have become increasingly reluctant to conduct any type of in-chambers or sidebar conference in light of the unsettled state of the law. Anne L. Ellington & Jeanine Blackett Lutzenhiser, *In Washington State, Open Courts Jurisprudence Consists Mainly of Open Questions*, 88 WASH. L. REV. 491, 519 n.194 (2013) (citing Interview with the Hon. Susan Craighead, King County Superior Court, in Seattle, Wash. (Dec. 1, 2011); Interview with the Hon. Anne Ellington, Washington State Court of Appeals, in Seattle, Wash. (Dec. 29, 2011)). We should not so disempower our trial judges. Because these issues may arise in every criminal case, we should provide further guidance to avoid the wasted resources inherent in retrials.

*B. History will often lean in favor of closure*

Finally, the logic and experience test is harmful because it has justified and will likely continue to justify closures. A survey of what Washington judges have done "at chambers" since statehood reveals that in-chambers conferences to discuss legal matters have long been seen as constitutional and within the discretion of the trial judge. Ellington & Lutzenhiser, *supra*, at 517-18 & n.193 (citing *In re Det. of Ticeson*, 159 Wn. App. 374, 384-85, 246 P.3d 550 (2011), *abrogated on other grounds by*

12

*Sublett*, 176 Wn.2d at 71-72). Because the experience and logic test calls for review of historical practices, it is possible that most such proceedings will eventually be excluded from the public.[6] Indeed, our court and the Court of Appeals have applied the test to limit the public trial right. *See* majority at 2 (sidebars); *Koss*, No. 85306-1 (preliminary in-chambers conferences to discuss jury instructions); *Sublett*, 176 Wn.2d at 76, 77 (public trial right does not attach to conference to discuss question from jury about its instructions); *see also State v. Miller*, 179 Wn. App. 91, 316 P.3d 1143 (2014) (public trial right does not attach to pretrial in-chambers discussion of statute or in-chambers discussion of proposed jury instruction); *State v. Burdette*, 178 Wn. App. 183, 313 P.3d 1235 (2013) (in-chambers discussion about responses to jury's question about an instruction or to initial jury question requesting clarification about how to proceed if it felt it was deadlocked); *State v. McCarthy*, 178 Wn. App. 90, 312 P.3d 1027 (2013) (trial court's response to jury's request for a tape measure and masking tape); *Love*, 176 Wn. App. 911 (parties' use of peremptory and for-cause challenges at a sidebar); *State v. Halverson*, 176 Wn. App. 972, 309 P.3d 795 (2013) (in-camera questioning of impaneled juror for alleged misconduct during deliberations), *review denied*, 179 Wn.2d 1016 (2014); *Wilson*, 174 Wn. App. 328

---

[6] Strangely, history informs the inquiry at times and is ignored other times. For example, in-chambers voir dire appeared to be a common practice before *Strode*, 167 Wn.2d 222. *See* Lauren A. Rousseau, *Privacy and Jury Selection: Does the Constitution Protect Prospective Jurors from Personally Intrusive Voir Dire Questions?*, 3 RUTGERS J.L. & URB. POL'Y 287, 311 (2006) (author surveyed 18 federal judges; "[v]irtually all" of them allowed potential jurors to answer intrusive or embarrassing questions "privately at the bench or in chambers, with only the judge, the court reporter, and the opposing counsel present"). Yet, the majority held in *Paumier* and *Wise* that voir dire must be conducted in an open court. *See Paumier*, 176 Wn.2d at 35; *Wise*, 176 Wn.2d at 11-12.

(excusal of jurors for illness-related reasons). In light of these cases, we should reevaluate and abandon the logic and experience test.

IV.    We Should Presume All Stages of Trial Are Open

I would reject the logic and experience test as a well-intentioned but ultimately unworkable test. Instead, I would hold that all phases of trial are presumed open. I would reiterate that a judge should not close any step in the proceeding without engaging in a *Bone-Club* analysis. If there is a timely objection, a trial judge must conduct a *Bone-Club* analysis on the record before closing a proceeding.

If part of the trial has been closed to the public without objection and without a *Bone-Club* analysis, an appellate court will usually not review the issue unless a party can establish "manifest error affecting a constitutional right." RAP 2.5(a)(3). In evaluating whether a trial closure is "manifest error," I would require an adequate record as well as a showing of actual prejudice. In an extreme case, such as closure of the entire voir dire process, the court could evaluate whether the closure has so undermined our confidence in the outcome of the trial that the closure should be considered "structural error."

*A. Benefits of requiring an objection at trial: clear rule for trial judges and fairness*

Unlike the logic and experience test, requiring an objection at trial provides clear guidance to trial court judges that they should not close any part of trial without conducting a *Bone-Club* analysis. Instead of drawing arbitrary lines between different types of proceedings, this rule properly places responsibility on trial attorneys to prepare their cases and make objections on the record. It also reduces strategic failures to object solely for purposes of appeal. Our current practice of automatically

reviewing every claimed violation of the public trial right could create an incentive for trial counsel to sit mute, deliberately not raising a constitutional error that might have little or no effect on trial but that may be the basis for a successful appeal. In sum, a requirement that defense counsel object preserves the integrity of the trial and reduces unnecessary appeals.

Relatedly, requiring an objection in most cases is fair because this rule acknowledges that there are sometimes tactical reasons not to object. In many situations, both parties might willingly consent to closing part of a trial or, indeed, might prefer it. In *State v. Shearer*, a case involving a domestic dispute, juror 7 indicated that she had experience with domestic violence but did not want to talk about it. The trial judge asked if anyone objected to questioning juror 7 in chambers, and neither the defense nor the state objected. In chambers, juror 7 revealed that her grandson was killed by his father in their home. Defense moved to dismiss juror 7 for cause, the State did not object, and juror 7 was excused. *State v. Shearer*, No. 86216-8, slip op. at 3-4 (Wash. Sept. 25, 2014). In *Slert*, the lead opinion notes that "[q]uestioning the jurors about their disqualifying knowledge in open court in front of the other jurors could have been potentially devastating to Slert's right to a fair trial." *Slert*, slip op. at 10. I would hold that neither party should be permitted to benefit by silently allowing the trial judge to close a portion of the trial without a *Bone-Club* analysis. *See State v. Rinkes*, 70 Wn.2d 854, 859, 425 P.2d 658 (1967) ("The general rule is that one cannot voluntarily elect to submit his case to the jury and then, after an adverse verdict, claim error which, if it did exist, could have been cured or otherwise

ameliorated by some action on the part of the trial court."); *State v. Perry,* 24 Wn.2d 764, 167 P.2d 173 (1946); *State v. Case,* 49 Wn.2d 66, 72, 298 P.2d 500 (1956).

B. *On appeal, benefits of requiring an objection: establishes a record, abides by our rules of appellate procedure, and protects the public trial right*

Requiring an objection in most cases has the benefit of developing an adequate record for appeal. We have before us two other cases in which the record fails to make clear whether there has been a violation of the public trial right: *State v. Koss,* No. 85306-1 (Wash. Sept. 25, 2014), and *State v. Njonge,* No. 86072-6 (Wash. Sept. 25, 2014). In each case, the record is inadequate because neither the parties nor the trial court raised the public trial right.[7] An objection by a party provides a forceful reminder that a *Bone-Club* analysis and an adequate record are both required. In addition, requiring an objection properly acknowledges that it is the duty of the parties to raise any objection and to establish a record of closure, thereby enabling adequate and full review on appeal.

When a party appeals a closure to which there was no objection, we should apply RAP 2.5(a)(3), which applies to constitutional errors to which there was no objection at trial:

> The appellate court may refuse to review any claim of error which was
> not raised in the trial court. However, a party may raise the following

---

[7] In *Koss,* the defendant claimed that the court held an in-chambers conference to discuss a question from the deliberating jury. But the record only showed that the jury exited, submitted a question and received an answer, and then returned with its verdict. The record does not reveal whether the judge discussed the question with counsel. *See Koss,* slip op. at 9-10. In *Njonge,* the defendant claimed the judge closed the courtroom to the public and media during voir dire. The record indicates that the judge explained that there was not enough room in the courtroom to accommodate all of the prospective jurors and the public, and stated that he would not permit the press to film the jury selection process. But no observer was actually asked to leave, there were no objections to the voir dire procedure, and there were no orders relating to a closure. *Njonge,* slip op. at 4-5.

16

claimed errors for the first time in the appellate court: . . . (3) manifest
error affecting a constitutional right.

When a party alleges constitutional error for the first time on appeal, we have
traditionally required a RAP 2.5(a)(3) analysis. *See, e.g., State v. Kirkman,* 159 Wn.2d
918, 926-27, 155 P.3d 125 (2007) (RAP 2.5(a)(3) analysis required where error
affecting right to trial by impartial jury was raised for first time on appeal); *State v.
Clark,* 139 Wn.2d 152, 155-56, 985 P.2d 377 (1999) (RAP 2.5(a)(3) analysis required
where error affecting confrontation clause right was raised for first time on appeal).
The party claiming error must identify the constitutional error and show that the error
is manifest. *State v. O'Hara,* 167 Wn.2d 91, 98, 217 P.3d 756 (2009). "Manifest"
requires a showing of actual prejudice; that is, the defendant must show the error "'had
practical and identifiable consequences in the trial of the case.'" *Id.* at 99 (internal
quotation marks omitted) (quoting *State v. Kirkman,* 159 Wn.2d 918, 925, 155 P.3d
125 (2007)).

Our Rules of Appellate Procedure properly limit the types of constitutional
claims that may be raised for the first time on appeal. Constitutional errors require
special appellate attention because they risk serious injustice to the accused as well
as adverse effects on the public's perception of fairness and the integrity of judicial
proceedings. *State v. Scott,* 110 Wn.2d 682, 687, 757 P.2d 492 (1988) (citing *State v.
McHenry,* 88 Wn.2d 211, 558 P.2d 188 (1977)). On the other hand, "permitting every
possible constitutional error to be raised for the first time on appeal undermines the
trial process, generates unnecessary appeals, creates undesirable retrials and is
wasteful of the limited resources of prosecutors, public defenders and courts." *State*

*v. Lynn*, 67 Wn. App. 339, 343-44, 835 P.2d 251 (1992). A judicious application of the "manifest" standard balances these competing values. *Id.* Thus, as the plurality opinion in *Sublett* properly noted, under RAP 2.5(a)(3), we will review an alleged manifest error affecting a constitutional right even if not raised in the trial court. 176 Wn.2d at 78. "But for relief to be granted, [a defendant] must show actual prejudice resulting from the error, and the error is nonetheless subject to harmless error review." *Id.* (citing *O'Hara*, 167 Wn.2d at 98-99).

Finally, requiring an objection protects the public trial right by reminding the trial court and all parties of the importance of this right. In our earlier decisions, we assumed we could best protect the public trial right by allowing parties to raise the issue for the first time on appeal. *Paumier*, 176 Wn.2d at 36-37. But requiring an objection has proved to be equally or even more protective of the public trial right. A contemporaneous objection permits the trial judge to resolve the issue when it should be resolved—at trial. An objection reminds the judge not to close any step in the trial process without engaging in a *Bone-Club* analysis. In other words, the objection protects the public trial right by forcing the trial judge to evaluate the issue and reassess whether to close a part of the trial or not. It puts the decision and the ability to establish a record in the hands of the defendant. In addition, our prior latitude in not requiring an objection is no longer needed because the many recent published decisions discussing the open trial right should have alerted most, if not all, defense counsel to the importance of the issue. It would be a rare defense attorney in Washington who remained unaware of the public trial right after our 14 opinions concerning the issue published since 2012. *See* Ellington & Lutzenhiser, *supra*, at

18

497 (public trial issue so familiar that *"Bone-Club"* is now a verb in Washington courtrooms).

## CONCLUSION

We face a plethora of public trial rights cases that test our court's two-prong logic and experience analysis. And unfortunately, the logic and experience analysis fails the test. As the body of public trial case law expands, the larger database provides an increasingly clear demonstration of the logic and experience test's shortcomings. Even "easy" applications of the test are no longer so easy, and the more troublesome applications are only beginning to arise. These cases demonstrate the defects in the logic and experience test: the uncertainty of what constitutes "logic" and "experience" and the inability of the test to consistently protect against errors of constitutional import. We will continue to deal with confusion spawned by this test should we adhere to our precedent. For the sake of courts, victims, defendants, and public confidence, we should provide much needed guidance and reiterate that all phases of trial are presumed open and should not be closed without a *Bone-Club* analysis on the record. I concur in affirming the Court of Appeals, but I would so hold because Smith did not object at trial, and he has not satisfied the requirements of RAP 2.5(a)(3).

I concur in result.

_Wiggins, J._

*State v. Smith*

No. 85809-8

OWENS, J. (dissenting) -- During William Glen Smith's trial, the judge and attorneys left the courtroom and gathered in a nearby hallway to hold private meetings on 12 occasions.[1] The attorneys made motions to exclude testimony and argued over the extent of questioning allowed with certain witnesses, and the judge made rulings regarding the admissibility of evidence and testimony. Those rulings helped shape the course of the trial, yet neither the public nor the defendant witnessed them.

The majority condones this secretive process, failing to consider the purposes behind our constitutional protection of the right to a public trial. Our constitution protects the right to a public trial and demands the open administration of justice because they are core safeguards in our system of justice. A public trial helps to ensure a fair trial by deterring misconduct and partiality. Also, as this court has said before, a public trial "provides for accountability and transparency, assuring that

---

[1] The judge closed the courtroom on one other occasion to discuss when to take a recess. Smith does not argue that this closure implicated his right to a public trial.

whatever transpires in court will not be secret or unscrutinized. And openness allows the public to see, firsthand, justice done in its communities." *State v. Wise*, 176 Wn.2d 1, 6, 288 P.3d 1113 (2012). The secret and unscrutinized conferences in this case violated Smith's right to a public trial. I dissent.

## FACTS

During Smith's trial, the judge and the attorneys held 12 private meetings in a back hallway. The majority dismisses these closures as "sidebars," but that generalization mischaracterizes the nature of these meetings.[2] The following summary shows that these discussions were challenges to evidence and testimony during trial, and—as explained below—experience and logic dictate that these discussions implicate the public trial right:

1. The court clarified a previous ruling regarding the admissibility of ER 404(b) evidence of a common scheme and overruled defense counsel's objection to testimony of a prior bad act.

2. Parties argued over whether one alleged victim could testify that she spoke with another alleged victim on the phone. The court overruled the prosecutor's relevancy objection and allowed the testimony.

3. Parties argued over whether a lay witness may offer opinion testimony and whether circumstantial evidence of the alleged victim's mental capabilities was admissible. The court excluded the opinion testimony but ruled that the circumstantial evidence was admissible.

---

[2] True sidebars are generally permissible—especially when held in open court. *See State v. Sublett*, 176 Wn.2d 58, 140, 292 P.3d 715 (2012) (Stephens, J., concurring) (condoning "brief sidebars to allow counsel to raise concerns that may need to be taken up outside the jury's presence").

4. Parties argued over whether the alleged victim could be impeached with a prior inconsistent statement. The court overruled the prosecutor's objection and allowed the question.

5. Parties argued over whether a detective was qualified to offer an opinion of handwriting found in the defendant's car. The court sustained defense counsel's objection and did not allow the opinion testimony.

6. In the hallway, the prosecutor preemptively moved to exclude Smith's statement to police that the sex was consensual as self-serving hearsay, but prior to the conclusion of the argument the court recessed. Then in open court, but before the jury returned, the court ruled that the statement was admissible to show that it was made, but not for the truth of the matter asserted.

7. Parties argued whether a police photograph of the alleged victim was inadmissible for lack of relevance. The court sustained the prosecutor's objection and ruled that the photograph was inadmissible.

8. Parties argued over the admissibility of Smith's written statement because it was prepared by police and then adopted by the defendant. The court overruled defense counsel's objection and ruled that the statement was admissible.

9. Parties argued over whether the treating physician could testify about the alleged victim's identification of the perpetrator. The court ruled that the testimony was inadmissible but defense counsel could impeach the alleged victim using it as a prior inconsistent statement.

10. Parties argued over whether the prosecutor had laid proper foundation to admit nude photographs of the alleged victim. The court overruled defense counsel's objection and ruled that the photographs were admissible.

11. The prosecutor moved to admit receipts for lingerie and other sexual items found in Smith's residence. The court overruled defense counsel's objection and ruled that receipts of sexual items found by the detective were admissible.

12. Parties argued over whether the prosecutor could ask Smith if he told his wife he did not sleep with the alleged victim. The court overruled defense counsel's objection and allowed the question to show that Smith may have lied.

3

These closures occurred over the course of a three-day trial. The jury convicted Smith of four counts of third degree rape and one count of second degree perjury.

## ANALYSIS

The majority concludes that the public trial right does not attach to the closures in this case. I disagree. The public trial right attaches to proceedings that implicate the core values of the public trial right. *State v. Sublett*, 176 Wn.2d 58, 72-73, 292 P.3d 715 (2012). We apply the experience and logic test to determine whether those core values are implicated. *Id.* at 73. If the public trial right attaches, the failure to conduct a *Bone-Club*[3] analysis on the record before closing the courtroom is structural error. *Wise*, 176 Wn.2d at 13-14. In this case, experience and logic indicate that closing the courtroom to discuss evidence and testimony during trial implicates the public trial right.[4] The trial court did not conduct a *Bone-Club* analysis, and therefore structural error occurred.

*Experience Prong*

The experience prong asks "'whether the place and process have historically been open to the press and general public.'" *Sublett*, 176 Wn.2d at 73 (quoting *Press-*

---

[3] *State v. Bone-Club*, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995) (describing the analysis that a trial judge must make before closing the courtroom).
[4] Smith does not argue that the first private meeting to discuss a time for recess implicates the public trial right, and I agree that it does not.

*Enter. Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)).

The majority erroneously concludes that "[s]idebar conferences have historically occurred outside the view of the public." Majority at 7. That conclusion oversimplifies the matter because the history on this issue is, at best, unclear.

In my experience, many judges do not close or leave the courtroom to discuss evidentiary challenges. Rather, many judges exclude the jury and discuss the matter in open court. This practice dates back to the early days of our judiciary. *See State v. Coella*, 3 Wash. 99, 118, 28 P. 28 (1891) (holding that defendant did not have a right to have the jury present during argument over proposed jury instructions; rather, "the safer course and better practice would be to exclude the jury"); *Gilcher v. Seattle Elec. Co.*, 82 Wash. 414, 415, 144 P. 530 (1914) ("[I]t is within the discretion of the trial judge to exclude the jury during the argument of counsel upon legal questions arising during the trial."); *see also State v. Cooper*, 26 Wn.2d 405, 416, 174 P.2d 545 (1946) (trial judge sent the jury out so the court could hear argument after co-defendant made a sudden request to "'verify'" a confession as it was being read); *State v. Barker*, 56 Wash. 510, 511-12, 106 P. 133 (1910) (trial judge sent the jury out so the court could discuss an objection to witness testimony); *State v. Carlson*, 80 Wn. App. 116, 120, 906 P.2d 999 (1995) (same).

The judges who choose to discuss evidentiary challenges outside of the courtroom do so out of mere convenience. *See, e.g., State v. Smith*, noted at 159 Wn.

5

App. 1011, 2011 WL 55972, at *2 n.2,[5] *review granted in part,* 176 Wn.2d 1031, 299

P.3d 20 (2013); *In re Det. of Ticeson,* 159 Wn. App. 374, 386 n.38, 246 P.3d 550

(2011) (relied on by the majority at 7-8; justifying an in-chambers sidebar because

interrupting trial to send the jury out could cause "long delays"). The majority

condones this practice, preferring not to annoy jurors with "constant[] marching in

and out of the courtroom" at the expense of our constitutional duty to ensure a public

trial. Majority at 12 n.13.

Our constitution cannot bow to convenience. *See State v. Frawley,* No. 80727-

2, slip op. at 8 (Wash. Sept. 25, 2014) (lead opinion) (stating that a *Bone-Club*

analysis "ensures that court proceedings are not closed merely for the sake of

convenience as a matter of course"). A trial judge has the constitutional duty to

ensure that trials are open to the public, even if that means that the jury must enter and

exit the courtroom several times during evidentiary discussions. I also note that in

this case the court held 12 private meetings over the course of three days. I see no

great burden in removing and reseating a jury approximately four times a day to carry

out the commands of our constitution. And, if a judge does face a serious obstacle to

---

[5] The Court of Appeals noted, "The practical configuration of the courtroom prompted the judge and attorneys to go outside because they could not record a conversation at the bench without the jury overhearing. It was a matter of convenience. Rather than having the jury exit the courtroom, the judge and attorneys would step outside to discuss the evidentiary and legal matters that arose during trial." *Smith,* 2011 WL 55972, at *2 n.2.

6

removing the jury, a contemporaneous *Bone-Club* analysis, on the record, could justify the closure.

The majority does little to refute the fact that many Washington courts have historically kept the courtroom open during evidentiary challenges. It cites two trial advocacy treatises that do not consider the special requirements of our state's constitution and one case from this court that has nothing to do with private *evidentiary discussions*. Majority at 7 (citing *State v. Swenson*, 62 Wn.2d 259, 272, 382 P.2d 614 (1963) (permitting a sidebar discussion to discuss witness comfort, not to discuss challenges to evidence or testimony)). While I know that some courts have developed a local practice of closing or leaving the courtroom during evidentiary challenges, I caution that when applying the logic and experience test, we must not forget that the presumption is in favor of openness. *State v. Paumier*, 176 Wn.2d 29, 34-35, 288 P.3d 1126 (2012). Therefore, to the extent that history or local practice conflicts, we must err on the side of openness. While this court has recognized that the experience and logic test is not perfect, *Sublett*, 176 Wn.2d at 75, we have never questioned the presumption of openness. Experience indicates that the evidentiary challenges involved in this case have been historically open to the press and public.

*Logic Prong*

"The logic prong asks 'whether public access plays a significant positive role in the functioning of the particular process in question.'" *Id*. at 73 (quoting *Press-Enter.*,

478 U.S. at 8). The majority concludes that "[n]othing is added to the functioning of the trial by insisting that the defendant or public be present" during the discussions at issue. Majority at 13. The majority reasons that defendants do not have a right to be present at all stages, and for the public, some legal discussions are "practically a foreign language." *Id.* I disagree. The majority overlooks the very purposes of the right to an open and public trial.

A public trial helps ensure that judges and lawyers are accountable for what occurs during trial. It helps remind them to act with decorum and to consider the consequences of their actions. Logically, this is perhaps most important during arguments over what evidence and testimony the jury will hear. Whether a key piece of evidence is admitted or not could decide the outcome of the entire trial. We should not allow attorneys and judges to make these important decisions in a back hallway, away from public scrutiny. The proper forum for argument on these issues is in open court.

Public trials also help foster trust in our judicial system, and they allow members of the public to see justice done in their communities. Logic indicates that hiding discussions over evidence and testimony in private will not further these goals. One can easily imagine a scenario where a party attempts to admit a key piece of evidence—the "smoking gun"—only to be met with an objection and a private conference where the judge determines that the evidence is inadmissible. The public

8

is left wondering what happened to the smoking gun mentioned just moments ago and why the jury is being told to forget that it ever existed. Logically, it follows that the public's trust in our justice system will weaken.

I also disagree with the assumption that the public will not comprehend the "foreign language" of legal argument. *Id.* Trial observers often include close family members of the defendant or the victims who have followed the case from the very start. These observers may have met with the attorneys or have researched the law independently and are eager to hear the legal arguments that could decide the case. Additionally, many practitioners and students attend trials to learn and to see justice in action. We should not allow the trial court to obscure legal discussions from these observers.

Without the publicity that comes with hearing evidentiary arguments in open court, a defendant is stripped of the protections offered by our public trial right and the public's confidence in our judicial system is weakened. Logic indicates that public access plays a significant positive role in the functioning of these evidentiary discussions.

## CONCLUSION

Experience and logic show that the public trial right attaches to the evidentiary discussions in this case. Therefore, the trial court committed structural error when it closed the courtroom on 12 occasions without first conducting a *Bone-Club* analysis.

9

In concluding otherwise, the majority fails to consider the core values that our public trial right protects and favors convenience over our constitution. I respectfully dissent.

Owens, J.

Goods, Mc. J.

Fairhurst, J.

11