Pennell, J.
¶25 (concurring) — I join the majority opinion in full. I write separately to emphasize additional circumstances supporting our conclusion that the in-chambers conference implicated the defendants’ public trial rights.
*756 ¶26 When it comes to mundane legal arguments, the use of an expedient such as a sidebar or in-chambers conference is of no moment. The “experience prong” of the public trial test is not met because, historically, the public has had little involvement in such matters. See State v. Smith, 181 Wn.2d 508, 516-18, 334 P.3d 1049 (2014). Resolving technical legal issues outside of direct public view or earshot does not impair public oversight of court proceedings or deny the public the ability to weigh a defendant’s guilt or innocence. Id. The “logic prong” also fails because discussions of evi-dentiary rules and similar matters often appear to the public as “a foreign language.” Id. at 519. There is generally nothing to gain by including the public in these discussions while they are taking place. Id.
¶27 The in-chambers arguments conducted in this case were different. Counsel did not merely address technical legal issues. The subject was the scope of cross-examination, specifically, whether defense counsel could cross-examine the State’s witness regarding prior cooperation with law enforcement. The discussion involved significant factual proffers. It held constitutional magnitude. See Davis v. Alaska, 415 U.S. 308, 316-17, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (constitutional right to cross-examine on bias created by relationship between witness and the State). Unlike what may be true in the often arcane context of hearsay or statutory construction, the public can readily understand the idea that a witness may be biased due to a relationship with law enforcement. Moreover, the public has a strong interest in assessing the significance of any such relationship and whether the defendant has been permitted to challenge the State’s evidence and thereby “discourage perjury.” State v. Sublett, 176 Wn.2d 58, 72, 292 P.3d 715 (2012) (plurality opinion); see also Waller v. Georgia, 467 U.S. 39, 46, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).
¶28 Also important to the public trial analysis is the fact that the in-chambers conference was not recorded. Contrary to the dissent’s assertions, the existence of simulta *757 neous recording is an important factor in the Supreme Court’s public trial jurisprudence. Smith, 181 Wn.2d at 518. Under the experience prong, simultaneous recording undercuts a public trial claim because “[a]ny inquiring member of the public can discover exactly what happened.” Id. Under the logic prong, simultaneous recording means “ [t] he public was not prevented from knowing what occurred.” Id. I agree with my dissenting colleague that use of simultaneous recording is not sufficient to comport with the public trial requirement. But it does not therefore stand to reason that simultaneous recording is unnecessary, let alone unimportant.
¶29 The use of simultaneous recordings goes a long way toward ensuring public access to court proceedings. When the subject matter of a proceeding is largely legal, simultaneous recording ensures substantially the same kind of public access as what is available when a legal matter is decided in writing. Judges undoubtedly can resolve numerous legal issues in writing, through motion practice, without implicating the public trial right. It stands to reason the same is true for oral decisions. See Sublett, 176 Wn.2d at 77 (public trial not implicated when judge substitutes oral presentation for what would normally occur in writing). So long as there is a recording, the public’s access to oral decisions is largely preserved.
¶30 No simultaneous recording occurred here. The fact that the attorneys placed their recollections of what happened on the record was an insufficient substitute. The human mind does not operate like a video or audio recorder. State v. Henderson, 208 N.J. 208, 245, 27 A.3d 872 (2011). Information offered through memory can be contaminated by an array of psychological and perceptive processes. Id. Relying on human memory to accurately recount what happened during a court proceeding is inadequate. More importantly, there can be little public confidence in a system where justice is administered privately, behind a judge’s closed doors. The public’s ability to independently *758 scrutinize court proceedings depends on access to complete and accurate information. Access is denied and independent review is thwarted when the public is forced to rely on the assurances from the bench and bar that nothing untoward has happened. The constitutional guaranty of open administration of justice requires more.
¶31 Had the trial court followed proper closure procedure, it may well have been possible to narrowly restrict the public’s access to information. See State v. Bone-Club, 128 Wn.2d 254, 258-59, 906 P.2d 325 (1995). But because the court never recognized the defendants’ public trial rights, the required analysis and narrowing did not occur. Our Supreme Court has treated this as the type of error that will warrant reversal, even when not preserved by way of objection. Id. at 261-62. Given this circumstance, I concur in the decision to reverse the defendants’ convictions.