# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 76213-3-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| JASON PLANQUE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 30, 2018 |

SPEARMAN, J. — Jonina Planque received a series of threatening messages posted to her Facebook account. The posts were sent from the Facebook account of her cousin, Jason Planque. Jason was charged with two counts of felony harassment and two counts of bail jumping. A jury convicted him as charged. On appeal, Jason contends that (1) unrecorded sidebars violated his right to a public trial; (2) limits on cross-examination of the complaining witness violated his constitutional right to present a defense; and (3) prosecutorial misconduct violated his right to a fair trial. His statement of additional grounds asserts further errors. We affirm.

## FACTS

Jason Planque was engaged in a bitter dispute with his cousin Jonina Planque and her father Dennis Planque over a contested will.[1] Jonina felt that her family's share had been "stolen." Verbatim Report of Proceedings (VRP) at 236. Although Jason and

---

[1] Due to the shared last names of the parties, first names are used throughout when discussing members of the family.

Jonina are cousins, and both lived on Whidbey Island, Jonina had not seen Jason in person since she was very young.

On the morning of May 7, 2015, Jonina discovered a series of threatening posts on her Facebook page.[2] The posts, which were sent from Jason's Facebook account earlier that morning, included the following language:

> "I will beat you in public...and go to jail for a second...if you ever come close to my mother, her property, my sister.... [G]et your chunky, pasty little wannabe bitch slut emo ass off of this rock before I call an order..." Plaintiff's Exhibit 20 at 18-19.

> "I WILL FUCKING REMOVE YOUR SLUT CUNT ASS OFF OF THIS ROCK BEFORE YOU RUIN OUR NAME CUNT. AND I WANT TO SEE ALL OF YOUR LITTLE ADMIRERS PEE THEY'RE PANTS WHEN IT GOES DOWN." Plaintiff's Exhibit 22.

> "You have no clue who you are fucking with...I will fuck you up. period. I am not as nice as the rest...and have NO patience for your petty bitch bullshit. I have the reality of means to make you and daddy disappear... and nobody will care...Got it? I have no problem taking you out of the gene pool stupid little girl." Plaintiff's Exhibit 18.

> "[B]ring dad on over when he gets out so I can shoot both of you in the face... It's what I do..." Plaintiff's Exhibit 19.

> "So how much does my father's life owe You...One shot." Plaintiff's Exhibit 19.

> "I will personally gut your father for what he has said about our grandmother, my mother, and my father..." Plaintiff's Exhibit 19.

> "You fuck with my family...I fuck you." Plaintiff's Exhibit 17.

> "Fuck again with mom or sis and I will track you down... pistol whip you...and make you feel beautiful... and pee on your face." Plaintiff's Exhibit 17.

> "Reasonable people don't go after a legacy that has nothing to do with them. Or they get shot. Or misplaced...where did we put that little cunt...who cares." Plaintiff's Exhibit 17.

---

[2] The messages were posted on Jonina's Facebook "timeline," where any of her Facebook "friends" could see them. VRP (11/15/16) at 230.

2

"I Can fuck with you at grandpas any time... Just sayin...." Plaintiff's Exhibit 22.

"Some people call me nuts.... I just handle shit." Plaintiff's Exhibit 22.

Jonina said that the posts caused her to fear for her life and that of her father, Dennis. She read the posts to Dennis, then contacted law enforcement. Later that day, Deputy Leif Haugen of the Island County Sheriff's Office arrested Jason. Deputy Haugen testified that at the time of arrest, Jason cursed him, threatened a neighbor, and threatened to kill Jonina.

Jason was charged with two counts of felony harassment. Upon his release from custody prior to trial, Jason twice failed to appear for court hearings, resulting in two additional counts of bail jumping.

At trial, the State produced Facebook records and testimony showing the series of messages posted on Jonina's Facebook account. Jonina and Dennis both testified regarding the nature of the threats in the context of the family dispute, and their fear that Jason would actually carry them out. The State also produced letters that Jason wrote in jail. He mailed them to judges and court personnel. In one of the letters, Jason explained that "all I was attempting to do is protect my family and our rightful inheritance. I will admit that my actions were disgusting and unaceptable [sic], but you must understand we have been under such duress and strain." Plaintiff's Exhibit 15. In another letter, he stated that his "alleged actions" were "made under unimaginable stress, anger and confusion" and that they "were unexcusable." Plaintiff's Exhibit 15.

Jason testified that in the hours before the messages were posted, he consumed large quantities of alcohol and became "blackout drunk." VRP (11/16/16) at 342. He

asserted that he had no memory of posting the messages and was unaware he committed the crime. Defense counsel argued that the State had not conclusively proved that Jason authored the posts, and that Jonina was biased due to the family dispute. Defense counsel also argued that the State failed to prove that Jason knowingly made the threats due to his level of intoxication.

The jury convicted Jason on all counts. He appealed.

DISCUSSION

Public Trial Right

Jason argues that his public trial right was violated where the trial court conducted three unreported sidebars. Criminal defendants have the right to a public trial. U.S. Const. amends. I, IV; Wash. Const. art. 1, §§ 10, 22. Whether a defendant's public trial right has been violated is question of law reviewed de novo. State v. Smith, 181 Wn.2d 508, 513, 334 P.3d 1049 (2014). "[N]ot every interaction between the court, counsel, and defendants will implicate the right to a public trial, or constitute a closure if closed to the public." State v. Slert, 181 Wn.2d 598, 603, 334 P.3d 1088 (2014), quoting State v. Sublett, 176 Wn.2d 58, 71, 292 P.3d 715 (2012). To determine whether this right has been violated, the court asks (1) whether the proceeding implicates the public trial right, (2) if so, whether the proceeding was closed, and (3) if so, whether the closure was justified. State v. Whitlock, 188 Wn.2d 511, 520, 396 P.3d 310 (2017).

In Smith, the Washington Supreme Court held that proper sidebars do not implicate the public trial right at all because "they have not historically been open to the public and because allowing public access would play no positive role in the proceeding." Smith, 181 Wn.2d at 511. Because the sidebar did not implicate the public

4

trial right, there was no need to determine whether the proceedings were closed or whether the closure was justified. "[E]videntiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." Id. at 518, citing Sublett, 176 Wn.2d at 77. Other proper sidebars include proceedings that "deal with the mundane issues implicating little public interest[,]... done only to avoid disrupting the flow of trial, and ... either ... on the record or ... promptly memorialized in the record." Whitlock, 188 Wn.2d at 522 (quoting Smith, 181 Wn.2d at 516 & n.10). "Typical examples of such mundane issues are scheduling, housekeeping, or decorum." Whitlock, 188 Wn.2d at 513.

Jason, citing Whitlock, argues that the unreported sidebars are a structural error requiring reversal. In Whitlock, the Washington Supreme Court held that an in-chambers conference concerning the proper extent of cross-examination of a confidential informant during a bench trial, which was not memorialized in the record until much later in the transcript, violated the defendant's right to a public trial. Id. at 522-23. Jason contends that the violation in his case is even more problematic than that in Whitlock because the sidebars in his case were never memorialized. But the Whitlock court held that the conference in question was not a sidebar, but rather an intentional courtroom closure. Therefore, unlike the sidebar in Smith, the proceeding in Whitlock implicated the public trial right. Whitlock, 188 Wn.2d at 522-23.

Here, the first sidebar occurred during the testimony of Island County Clerk Debra Van Pelt. The prosecutor and defense counsel asked to approach the bench for a sidebar. When the conference was over, the court said "We're going to have a break."

VRP (11/16/16) at 296-97. The second instance occurred during direct examination of Jason. Defense counsel asked him to "tell the jury a little bit about the recent loss you suffered within your family." The prosecutor objected on grounds of relevance and asked for a sidebar. When the conference was over, the court stated, "your objection is overruled." VRP (11/16/16) at 340. The third instance occurred during cross-examination of Jason. The State asked him whether he had ever apologized for threatening Jonina. Defense counsel objected on the ground that the question was "outside the scope." The court sustained the objection, and the State asked for a sidebar. Following the sidebar, the court stated "[t]he objection is overruled," and permitted the State to continue this line of questioning. VRP (11/16/16) at 345-46. In all three instances, the only record of the sidebar is the following notation: "Whereupon, a bench conference was had off the record and out of the hearing of the jury." VRP (11/16/16) at 296-97, 340, 346.

The State argues that the content of the sidebars can be inferred from the record, and that it is unlikely the sidebars implicated a public trial right. According to the State, the sidebar during the testimony of Debra Van Pelt was most likely simply about taking a break, which is a mundane issue not implicating the public trial right. The State further argues that the other two sidebars, which were followed by evidentiary rulings on the record, most likely focused on legal arguments concerning the admissibility of evidence, also a proper matter for sidebars.

Notably, in Smith the sidebars held proper were "contemporaneously memorialized and recorded, thus negating any concern about secrecy." 151 Wn.2d at 518. Here, it is not possible to determine the exact content of the sidebars because

6

neither Jason nor the State memorialized them on the record. Nonetheless, we agree with the State. Although it would have been preferable for the court to place a detailed notation regarding the sidebar on the record, here, it is abundantly evident that the first sidebar involved whether to take a recess and the latter two addressed typical evidentiary rulings, the types of issues that Smith held do not implicate the right to a public trial.[3]

## Right to Cross-Examine Witnesses

Jason argues that the trial court's exclusion of relevant evidence violated his Sixth Amendment right to present a defense. A trial court's ruling on the admissibility of evidence is reviewed for abuse of discretion. State v. Fisher, 165 Wn.2d 727, 750, 202 P.3d 937 (2009). The trial court abuses its discretion when its decision is "manifestly unreasonable or based on untenable grounds or reasons...." State v. Powell, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

The right to confront and cross-examine adverse witnesses is guaranteed by both the federal and state constitutions. U.S. Const. amend. 6; Wash. Const. art. I, §22. "A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence." State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010). However, "the right to cross-examine adverse witnesses is not absolute." State v. Darden, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). Trial courts "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-

---

[3] Jason asks us to reverse on the ground that structural error occurred because the trial court failed to make a contemporary record of what was discussed during the sidebars. We reject the invitation because, as we have noted, the nature of the sidebars is apparent from the record.

examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witnesses' safety, or interrogation that is repetitive or only marginally relevant." State v. Lee, 188 Wn.2d 473, 490, 396 P.3d 316 (2017) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)).

Prior to trial, the State moved to "limit testimony of all witnesses to a brief description of the nature of the [family] dispute."[4] Clerk's Papers (CP) at 104. The State argued that:

> The Defendant and the victims are engaged in a complicated but unrelated civil dispute involving a contested will. The existence of this dispute is only relevant to the current charges, to the extent that it forms the Defendant's motive for the charged crimes. Additionally, defense counsel may argue that the existence of the dispute shows potential bias on the part of the State's witnesses. Regardless, exhaustive detail about the civil dispute is not relevant to this criminal case and would be a distraction for the jury. ER 401; ER 403. The State asks the court to limit testimony of all witnesses to a brief description of the nature of the dispute. This criminal trial is not an opportunity to litigate, or re-litigate, issues such as the proper distribution of an estate, how often each family member visited Steven or Yvonne Planque before their deaths, or the details of past arguments between the individual factions of the Planque family.

CP at 103-04.

At trial, Jonina testified briefly on direct examination about the dispute, describing the circumstances as a "civil battle" and claiming that her grandparents' estate had been "stolen." VRP (11/16/16) at 236-37. On cross-examination, defense counsel stated, "And prior to this incident on May the 7th there was a kind of an altercation when..." VRP (11/16/16) at 238. At that point, the State objected "on grounds of relevance, but also beyond the scope of Direct. Whatever incident defense counsel is trying to get into here

---

[4] The State notes that defense counsel raised no objection to this argument during pre-trial motions. However, after reviewing the record, it does not appear that the trial court actually ruled on this motion.

was not discussed on Direct. I only went into, as I argued in the Trial Brief, what I thought was the limited, but necessary explanation of circumstances, which was the general nature of the dispute – civil dispute over an estate." VRP (11/15/16) at 239. Defense counsel responded that she wanted to bring up "an incident that is in Ms. Jonina Planque's statement that happened the week before this incident. It goes to bias as there was a bit of an altercation at the Tap Room,[5] and I wanted to bring that up as this is cross-examination for impeachment purposes. It goes to bias." VRP (11/15/16) at 240. The court ruled that the question was beyond the scope of direct, and sustained the objection. VRP (11/15/16) at 240.

Jason contends that the trial court erred in preventing counsel from cross-examining Jonina about the alleged incident at the Tap Room. He argues that the evidence relating to the altercation was relevant to Jonina's bias, partiality, and credibility, as well as to Jonina's accusations towards Jason. He asserts that the evidence should have been admissible because the State failed to show it was "'so prejudicial as to disrupt the fairness of the fact-finding process at trial.'" State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010) (quoting State v. Darden, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002)).

The trial court erred in excluding this testimony on the ground that the question was beyond the scope of direct. Evidence of a witness' bias and partiality "is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" Davis v. Alaska, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (quoting 3A J. Wigmore, Evidence § 940, p. 775 (Chadbourn rev. 1970)).

---

[5] The Tap Room is a bar on Whidbey Island.

However, this court "may affirm on any correct legal basis." State v. Barnes, 54 Wn. App. 536, 541, 774 P.2d 547 (1989) (citing Sprague v. Sumitomo Co. Ltd., 104 Wn.2d 751, 758, 709 P.2d 1200 (1985)). We affirm the trial court because the constitutional rights to cross examination and to present a defense do not extend to irrelevant evidence. Jones, 168 Wn.2d at 720 (citing State v. Gregory, 158 Wn.2d 759, 786, n.6, 147 P.3d 1201 (2006).

Here, Jason failed to establish that the testimony was relevant to the witness' bias. It does not appear to be in dispute that Jason was not a party to the altercation with Jonina. It involved either his mother or sister. Thus, other than his bald claim that the testimony went to Jonina's bias, Jason did not explain to the trial court, or on appeal, why or how the testimony would demonstrate her partiality. Nor did he offer any explanation of how excluding the testimony impaired his ability to argue his theory of defense. Indeed, limited testimony regarding the contested will and the bitter dispute between Jason and Jonina was admitted, and Jason made use of it to argue in closing that Jonina's attitude about the family estate went to her prejudice and bias. Absent some explanation of the relevancy of Tap Room incident, the trial court did not err in excluding it. Jason's constitutional right to present a defense was not violated.

### Prosecutorial Misconduct

Jason argues that the prosecutor's statements during closing arguments amounted to prosecutorial misconduct. This court reviews claims of prosecutorial misconduct for abuse of discretion. State v. Ish, 170 Wn.2d 189, 195-96, 241 P.3d 389 (2010). "In a prosecutorial misconduct claim, the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial." State v. Emery, 174

Wn.2d 741, 756, 278 P.3d 653 (2012) (citing State v. Thorgerson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011)). The prosecutor's challenged statements are evaluated "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." State v. Dhaliwal, 150 Wn.2d 559, 578, 79 P.3d 432 (2003). "A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury." State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005) (citing State v. Hoffman, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991). "But a prosecutor commits reversible misconduct by urging the jury to decide a case based on evidence outside the record." State v. Pierce, 169 Wn. App. 533, 553, 280 P.3d 1158 (2012).

Here, Jason argues that the prosecutor committed reversible misconduct by telling the jury three times during closing arguments that Jason stated: "I am for real. I've got nothing to lose. I have the means to kill you. And I'm in exactly the state of mind to carry it out." VRP (11/16/2016) at 377, 378, 409. Because the evidence presented at trial did not show that this phrase was among the messages that Jason was alleged to have posted on Jonina's Facebook page, Jason contends that the prosecutor improperly urged the jury to decide the case based on evidence that did not exist in the record.

Defense counsel at trial did not object to the prosecutor's statements. If defense counsel fails to object to an improper remark, it waives the error "unless the remark is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

We conclude that the prosecutor's remarks were not improper. When evaluated in the context of the entire argument, it is apparent that the prosecutor did not tell the jury that Jason actually posted that exact phrase on Jonina's Facebook page. Rather, the prosecutor drew a reasonable inference about the overall message that Jason intended to impress upon Jonina, based on all of the messages that Jason posted.

> Jason Planque did a lot more than just say he was going to kill someone. He really went the extra mile to make sure that he got his point across.
>
> And his point was to deliver a message. One message.
>
> The message was this: "I am for real. I've got nothing to lose. I have the means to kill you. And I'm in exactly the state of mind to carry it out."
>
> That was the message.
>
> That was the message that Jason Planque sent to Jonina on May 7th, 2015. It took him many words to send that message. He did it over the course of numerous Facebook posts and comments on his posts....
>
> So was that message received? You bet it was. Loud and clear.

VRP (11/16/16) at 377-78 (emphasis added).

> Defense counsel indicates that Dennis Planque doesn't – doesn't remember – doesn't remember anything important about those threats because he couldn't restate the exact words written in the threats.
>
> What did Dennis Planque remember? Dennis Planque remembered the message.

VRP at 409.

Jason suggests that the presence of quote marks around the "message" in the transcript shows that the prosecutor indicated to the jury that he was quoting Jason. But the State denies that the prosecutor made any gesture at trial to indicate that the

language was a direct quote, and Jason admits that it is not possible to know how the transcriptionist elected to employ punctuation. A review of the transcript suggests that the transcriptionist was not consistent in the use of quotation marks. See, e.g. VRP (11/16/16) at 386 (no quotation marks placed around a direct quote from the Facebook posts read by the prosecutor to the jury).

Moreover, if defense counsel had objected below, the judge could have easily neutralized any prejudice by admonishing the jury to disregard the prosecutor's "message" language because there was no evidence that Jason used those exact words. Jason has not shown that reversal is required.

## Statement of Additional Grounds

Jason filed a pro se statement of additional grounds for review (SAG), consisting mostly of a detailed description of his perspective on the civil dispute involving Jonina and Dennis. But the vast majority of this information is not in the record before this court. "Only documents that are contained in the record on review should be attached or referred to in the statement." RAP 10.10(c).

Jason argued that defense counsel was incommunicative, inexperienced, or may have intentionally conspired with the prosecutor to help build his conviction rate. To prevail on a claim of ineffective assistance of counsel, a defendant must establish both ineffective representation and resulting prejudice. State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). Jason's SAG does not make this showing. Jason further argues that his attorney provided an inadequate defense for refusing to incorporate evidence of the family dispute into her defense strategy. "'[D]eficient performance is not shown by matters that go to trial strategy or tactics.'" State v. Studd, 137 Wn.2d 533, 551, 973

13

P.2d 1049 (1999) (quoting State v. Hendrickson, 129 Wn.2d 61, 77-78, 917 P.2d 563 (1996)). Defense counsel was not deficient for failing to make arguments based on inadmissible evidence. And the record shows that defense counsel did make use of admissible evidence regarding the family dispute to argue bias and prejudice.

Jason contends that his accusers provided false testimony at trial and that he was unfairly prevented from presenting evidence of the family dispute, which he claims would have proved they were perjuring themselves. Again, this argument relies on his version of events as described in his SAG. "[I]ssues that involve facts or evidence not in the record are properly raised through a personal restraint petition, not a statement of additional grounds." State v. Calvin, 176 Wn. App. 1, 26, 316 P.3d 496 (2013) (citing State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008)).

Jason claims that the trial court commenced trial even though both the prosecutor and defense counsel said they were not ready. The decision to grant or deny a motion for continuance rests with the trial court. State v. Downing, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004). The record shows that on the eve of trial, defense counsel asked for a continuance because Jason suddenly wanted new counsel. The trial court heard Jason's arguments and denied the motion. The record does not support Jason's assertion that any other continuances occurred in the manner he describes.

Jason contends that the police officer who described his arrest was untruthful. But this court defers to the trier of fact on issues of testimony, credibility of witnesses, and the persuasiveness of the evidence. State v. Bencivenga, 137 Wn.2d 703, 708-09, 974 P.2d 832 (1999).

14

Jason argues that the prosecutor improperly used evidence of his past criminal record in the arguments and instructions to the jury. The record does not support this claim. Similarly, the record does not support Jason's argument that he was prejudiced by the State's introduction of a highlighted version of the Facebook posts. The record shows that defense counsel did object to the highlights, and the court responded that it would have the exhibit copied over again to make it "clearer." VRP (11/16/2016) at 335-36. There is no indication that prejudice occurred.

Jason points out that an Island County Sheriff testified that he could not say with 100 percent certainty that Jason is the individual who posted the Facebook messages. To the extent that this assertion could be read to imply that the evidence was not sufficient to support the verdict, we reject it. To the extent that Jason's SAG may imply other errors, they are insufficiently articulated to permit review. "[T]he appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors." RAP 10.10(c).

Affirm.

_Spearman, J._

WE CONCUR:

_Trickey, J_                    _Becker, J._

15