# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,               )
                                   )       No. 76858-1-I
    Respondent,              )
                                   )       DIVISION ONE
    v.                        )
                                   )       UNPUBLISHED OPINION
GARY MICHAEL RICHARDS,             )
                                   )
    Appellant.               )       FILED: April 22, 2019
_____)

LEACH, J. — Gary Michael Richards appeals his conviction for assault in the second degree and his sentence. He challenges a number of the trial court's evidentiary rulings and claims that three off-the-record sidebars violated his right to a public trial. He also asserts that the trial court mistakenly believed it did not have discretion to impose an exceptional sentence downward on a firearm enhancement. But Richards does not show that any alleged evidentiary errors prejudiced him or that the public trial right attached to the questioned sidebars. And binding precedent holds that the language of the firearm enhancement statute deprives sentencing courts of the discretion to impose an exceptional sentence for a firearm enhancement. We affirm.

## FACTS

Harry Richards[1] owns about 13 acres of land containing his house and a galvanized building or "shop," among other structures. Harry's brother, Gary Richards, has lived in the shop "off and on" and was living there in 2015. Harry testified that Richards's living conditions were poor. He stated that Richards had had a difficult time the previous winter because he had to pack propane into the shop for heat.

On October 18, 2015, Harry went to the shop to speak with Richards about the possibility of Richards moving into a trailer on the property for the winter. Harry asked Richards, "[W]hat do you think about moving into a nice trailer like the one I have? You've seen my trailer. It's got a tip-out. It's comfortable." Harry testified that Richards initially reacted positively. But when Harry told Richards that their mother had offered to buy the trailer, Richards insulted their mother. Harry, who had been leaning against a sawhorse, stood up and told Richards not to "talk about mom like that." Richards attempted to kick Harry in his groin. Before Richards's foot made contact, Harry grabbed his foot and took him to the ground. Harry then grabbed Richards by his shirt collar and said it was not acceptable to disrespect their parents. Richards was "very angry[,] . . . kind of spitting," and trying to hit Harry. Harry hit Richards in the

---

[1] For purposes of clarity, we refer to Harry Richards as Harry and Gary Richards as Richards.

head and told Richards not to hit him. Richards began crying and told Harry to get out and leave him alone.

Harry let go of Richards and started walking back to his house. When Harry was 50 to 75 feet away he heard metal on metal like the shop door opening and looked back to see Richards holding a rifle. Harry dialed 911 as he quickly walked to a tree to take cover. Harry "peeked out" from behind the tree long enough to see that Richards saw him and was beginning to move his rifle upward from its vertical, downward position. Harry told police, "I'm getting shot at here and I need some help." He identified the shooter as Richards. While Harry was talking with police, he heard three quick gunshots.

Responding Officer Leif Haugen testified that upon detaining Richards, Richards stated that he and Harry had gotten into an argument and Harry had hit him on the left side of his temple, causing him to fall back and cut his head open. Richards told Haugen that after he fell, Harry "kept hitting me in the head. And I told him to leave." After Harry left, Richards stated, "I walked back to where we had the argument. I told him to leave me alone and I fired three rounds into the trees above him, way above him. He hid behind a tree. I wasn't shooting at him." Richards stated that he was only trying to scare Harry. At trial, Richards testified that he shot three times in the air toward the trees because he was afraid of Harry and did not want Harry "beating [him] more."

Richards told Haugen that after the incident, he "walked off by Misty Meadows with [his] dog." Richards said that he had fired a .22 caliber Lever-Action rifle, which Haugen later found in a chicken coop on Harry's property. Richards also told police that he thought the magazine was in the barbecue. Police did not find the magazine in the barbeque and never recovered it.

Police took photographs of a red mark on the left side of Richards's face and a cut on the top of his head. Haugen testified that he took Richards to a hospital to have his cut examined.

In an amended information, the State charged Richards with assault in the second degree and a firearm sentencing enhancement. The jury found Richards guilty as charged and that he was armed with a firearm at the time of the offense. The trial court imposed a low-end standard range sentence of 3 months for the second degree assault conviction and 36 months for the firearm enhancement for a total of 39 months. Richards appeals.

ANALYSIS

Admission of Evidence

Richards challenges select evidentiary rulings on the grounds that the evidence was either inadmissible propensity evidence or irrelevant. Richards shows error but not prejudice.

An appellate court reviews a trial court's evidentiary rulings for an abuse of discretion.[2] A trial court abuses its discretion when it makes a manifestly unreasonable decision or it bases its decision on untenable grounds or reasons.[3] For example, a court's decision is manifestly unreasonable if it "'relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law.'"[4]

*A. Propensity Evidence*

Richards claims that the trial court should not have admitted evidence of a 2007 incident in which he shot a rifle into the air to scare his neighbor's dog. He asserts that the State used it to show his propensity to fire firearms into the air as a scare tactic in violation of ER 404(b). We agree but decide that this error did not prejudice Richards.

ER 404(b) prohibits evidence of prior bad acts to show propensity to commit a crime.[5] But this rule authorizes its admission for certain purposes, including "'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'"[6] "To use prior acts for a nonpropensity based theory, there must be some similarity among the facts of the acts themselves."[7]

---

[2] State v. Slocum, 183 Wn. App. 438, 449, 333 P.3d 541 (2014).

[3] Slocum, 183 Wn. App. at 449.

[4] Slocum, 183 Wn. App. at 449 (quoting State v. Hudson, 150 Wn. App. 646, 652, 208 P.3d 1236 (2009)).

[5] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003).

[6] DeVincentis, 150 Wn.2d at 17 (quoting ER 404(b)).

[7] State v. Wade, 98 Wn. App. 328, 335, 989 P.2d 576 (1999).

Then, intent or motive can logically flow from introduction of the prior acts.[8] "It is the facts of the prior acts, not the propensity of the actor, that establish the permissive inference admissible under ER 404(b)."[9]

Before admitting evidence of a prior bad act, a trial court must (1) find by a preponderance of the evidence that misconduct occurred, (2) determine that the prior act is relevant to a material issue, (3) state on the record the purpose for which the evidence is admitted, and (4) determine that the danger of undue prejudice is outweighed by the probative value of the evidence.[10] "'When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out.'"[11] This court resolves doubtful cases in favor of the defendant.[12]

Here, the trial court admitted testimony of Richards's neighbor, Diane Curtis, about an incident in 2007. Curtis described a day when she was throwing a ball for her dog near Richards's shop. When her dog went through a fence, it made noise. She then heard gunshots coming from near Richards's shop and heard Richards say, "You're out of here." This scared her. She crawled back to her house on her hands and knees because she did not know where the bullets were going. She called 911. Richards testified that he shot his rifle into the air to

---

[8] Wade, 98 Wn. App. at 335.
[9] Wade, 98 Wn. App. at 336.
[10] State v. Vars, 157 Wn. App. 482, 495, 237 P.3d 378 (2010).
[11] Wade, 98 Wn. App. at 334 (quoting Shepard v. United States, 290 U.S. 96, 104, 54 S. Ct. 22, 78 L. Ed. 196 (1933)).
[12] Wade, 98 Wn. App. at 334.

scare Curtis's dog away from him because her dog "was constantly coming over everyday eating [his] dog's dog food" and growled at him when he left his motor home.

At trial, the State offered this evidence to show a common scheme or plan, Richards's state of mind and his motive, and the absence of self-defense. After an ER 404(b) hearing, the trial court denied the State's request to admit Curtis's testimony to show a common scheme or plan because the evidence was too remote. But the court admitted this evidence for purposes of showing Richards's intent and motive and an absence of self-defense. The court concluded that Richards's actions in 2007 and 2015 had the requisite similarity to allow admission of the 2007 incident because "[t]he Defendant is alleged to have been angry and discharged a firearm to scare someone in both cases." The court noted Richards could argue to the jury that he had a different motive in 2015 than in the 2007 incident and that his actions in 2015 were in self-defense.

During trial, the trial court told the jury,

I'm allowing . . . evidence [of the 2007 incident], coming from [Curtis], but you may consider the evidence only for the purpose of determining the Defendant's motive, intent, and whether the Defendant acted in self-defense on October 18, 2015.

You may not consider the evidence for any other purpose.

The court also gave a limiting instruction to that effect.

I. Intent

First, Richards claims that the trial court abused its discretion by admitting evidence of the 2007 incident under an intent theory. We agree.

> When the State offers evidence of prior acts to demonstrate intent, there must be a logical theory, other than propensity, demonstrating how the prior acts connect to the intent required to commit the charged offense. That a prior act "goes to intent" is not a "magic [password] whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in [its name]."[13]

Richards relies on State v. Wade[14] to show that the circumstances surrounding the 2007 and 2015 incidents were not sufficiently related to allow admission of the 2007 incident as evidence of his intent in 2015.[15] In Wade, the trial court admitted evidence of Wade's prior sales of cocaine, which the State offered to prove intent to deliver cocaine.[16] Division Two of this court held that the trial court erred in admitting this evidence because the facts of the charged offense differed significantly from the facts of the previous offenses.[17] Division

---

[13] Wade, 98 Wn. App. at 334 (alterations in original) (quoting State v. Saltarelli, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)).

[14] 98 Wn. App. 328, 989 P.2d 576 (1999).

[15] Richards also claims that the 2007 incident is too remote to be admissible as evidence of intent. But remoteness is relevant to whether a prior bad act is probative of a common scheme or plan, not whether it is probative of intent. "[T]o be admissible, evidence of a defendant's prior sexual misconduct offered to show a common plan or scheme must be sufficiently similar to the crime with which the defendant is charged and not too remote in time." State v. Lough, 125 Wn.2d 847, 860, 889 P.2d 487 (1995).

[16] Wade, 98 Wn. App. at 333.

[17] Wade, 98 Wn. App. at 337.

Two stated that the prior sales involved police observation of Wade trafficking in drugs and selling drugs to an undercover officer, while in the current case, Wade saw an officer, emptied his pocket, and ran.[18] The court concluded that the admission of evidence about Wade's prior sales allowed the improper inference that "[b]ecause the previous convictions are for the same type of crime, including the requisite intent, Wade was predisposed to have that same intent on the current occasion."[19]

Similarly, Richards contends that here, the 2007 and 2015 incidents are too distinct for the 2007 incident to be admissible as evidence of intent. Richards reasons that in 2007, he fired his rifle into the air to scare a dog. In 2015, he fired a gun into the air after an argument with Harry during which Harry injured him. Richards claims that the only similarities are that he fired a gun into the air, which purposefully or inadvertently scared the person nearby. He asserts that admission of the 2007 incident supports only the improper inference that he was predisposed to have the same assaultive intent in 2015.

In response, the State asserts that in both instances, Richards responded to a perceived intrusion into his domain by firing his rifle into the air to scare the intruder. And after both incidents, Richards minimized his actions by telling Curtis that she had "turned his dad against him" because she told his father what

---

[18] Wade, 98 Wn. App. at 337.
[19] Wade, 98 Wn. App. at 337.

had happened and by commenting that his assault against Harry was not a "big deal."

Consistent with Richards's argument, the 2007 and 2015 incidents have limited similarities. The incidents are more factually connected than those in Wade. But because Richards fired a gun into the air to scare something or someone near his residence does not make the similarities between the incidents sufficiently plentiful or the incidents sufficiently unique to outweigh the potential prejudice to Richards. And a court should resolve doubtful cases in favor of the defendant. We conclude that the trial court abused its discretion by admitting evidence of the 2007 incident to show intent. But, as discussed below, this error is harmless.

II. Motive

Next, Richards claims that the trial court abused its discretion by admitting evidence of the 2007 incident to show motive. We agree.

"Motive" means "'[a]n inducement, or that which leads or tempts the mind to indulge a criminal act.'"[20] Richards relies on State v. Saltarelli[21] to support that the 2007 incident does not establish any motive for the 2015 incident. There, our Supreme Court held that the trial court erred in admitting evidence of Saltarelli's previous assault of a woman because it could not show a motive for his alleged

---

[20] Saltarelli, 98 Wn.2d at 365 (alteration in original) (quoting BLACK'S LAW DICTIONARY 1164 (4th ed. 1968)).
[21] 98 Wn.2d 358, 655 P.2d 687 (1982).

rape of a different woman five years later.[22]   Richards also relies on cases in which our Supreme Court upheld the admission of prior acts to show motive when the previous conduct involved the same victim as the victim in the case at bar.[23]

Here, the 2007 incident involved Curtis and her dog, while the 2015 incident involved Harry.  Because Richards's motivation for shooting his rifle in Curtis's presence is unrelated to his motivation for shooting his rifle in Harry's presence, the trial court erred in admitting evidence of the 2007 incident under ER 404(b) for purposes of establishing motive.  But again, we conclude that this error was harmless.

III. Absence of Self-Defense

Richards also claims that the trial court abused its discretion by admitting evidence of the 2007 incident to show an absence of self-defense.  We agree.

Richards relies on State v. Thompson[24] to show what type of 404(b) evidence may be used to rebut a self-defense claim.   There, a jury found Thompson guilty of manslaughter in the first degree and assault in the second

---

[22] Saltarelli, 98 Wn.2d at 365.
[23] See State v. Hoyer, 105 Wash. 160, 163, 177 P. 683 (1919) (in Hoyer's appeal of his conviction for murder in the first degree, our Supreme Court did not "find any error in the admission of testimony as to the details of the quarrels [between Hoyer and the victim] which preceded the homicide"); see also State v. Powell, 126 Wn.2d 244, 260, 893 P.2d 615 (1995) (in Powell's appeal of his conviction for murdering his wife, our Supreme Court upheld the trial court's admission of evidence of Powell's prior assaults of his wife).
[24] 47 Wn. App. 1, 733 P.2d 584 (1987).

degree while armed with a deadly weapon.[25] This court upheld the trial court's admission of evidence showing that Thompson exhibited aggressive, violent behavior within a few hours of the shooting at issue; it reasoned that the testimony was "relevant to show the absence of self-defense by showing a continuing course of provocative conduct."[26]

The State relies on State v. Turner,[27] involving defense of property, in which a jury convicted Turner of three counts of second degree assault and reckless endangerment for shooting at teenagers who threw eggs at his house. Division Two of this court held, "Because defendant's prior hypothetical question [to an officer] regarding the firing of warning shots in defense of his property indicated a frame of mind relevant to proof of intent in the present case, . . . testimony regarding [this] incident[ ] was proper."[28]

Unlike in Thompson, where the earlier conduct occurred within hours of the incident, here, the 2007 incident occurred eight years before Richards's argument with his brother. And, unlike in Turner, here, the circumstances surrounding the earlier conduct were much different than those surrounding the incident at issue. Consistent with Richards's argument, Curtis's testimony does not support that Richards took any self-defense actions in the 2007 incident. As

---

[25] Thompson, 47 Wn. App. at 5.
[26] Thompson, 47 Wn. App. at 2-4, 12.
[27] 29 Wn. App. 282, 284-86, 627 P.2d 1324 (1981).
[28] Turner, 29 Wn. App. at 290.

discussed above, in 2007, Richards shot his rifle into the air to scare Curtis's dog, and in 2015, Richards shot his rifle into the air after a physical fight with his brother. The 2007 incident was thus too remote from and dissimilar to the 2015 incident to show an absence of self-defense. But this error was harmless.

IV. Harmless Error

Richards contends that the trial court's error in admitting the 2007 incident to show intent, motive, and an absence of self-defense resulted in prejudice. We disagree.

A reviewing court will not reverse due to error in admitting evidence that does not result in prejudice to the defendant.[29] "'[E]rror is not prejudicial unless, within reasonable probabilities, the outcome of the trial would have been materially affected had the error not occurred.'"[30]

Richards claims that admission of the 2007 incident prejudiced him for two reasons: (1) it led jurors to believe that because he acted wrongfully in shooting his rifle for purposes unrelated to self-defense in 2007, he did the same in 2015, and (2) it undermined his self-defense claim. But testimony from Richards, Harry, and responding officer Haugen established that following Richards's and Harry's dispute, as Harry was walking away from Richards's shop, Richards shot his rifle into the air to scare Harry. Harry hid behind a tree and called the police,

---

[29] State v. Thomas, 150 Wn.2d 821, 871, 83 P.3d 970 (2004).
[30] Thomas, 150 Wn.2d at 871 (quoting State v. Tharp, 96 Wn.2d 591, 599, 637 P.2d 961 (1981)).

-13-

stating that Richards was shooting at him. Richards later told Curtis that he fired his rifle into the air after his argument with Harry because he "got pissed off." This evidence strongly supports the jury verdict. Richards does not establish, within reasonable probabilities, that error in admitting evidence of the 2007 incident materially affected the outcome of the trial. Admission of Curtis's testimony about this incident was harmless.

B. *Living Conditions*

Richards also claims that the trial court abused its discretion by admitting evidence of his living conditions because it was irrelevant and unfairly prejudicial. We disagree.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without [that] evidence."[31] Only relevant evidence is admissible.[32]

Here, Harry testified about the state of Richards's shop. He stated, "If I had to describe it, I would say my first reaction was probably disgust and unsanitary and then sad. Sad because a guy would be able to live in those conditions, somebody that's as capable as my brother Gary is." The State asked what Harry meant by "capable." Richards's trial counsel objected on the basis of

---

[31] ER 401.
[32] ER 402.

relevance and improper opinion. After a sidebar conducted off the record, the trial court overruled the objection. The State asked to admit two photographs Harry took of the inside of the shop. Richards's defense counsel objected based on relevance. The trial court overruled the objection. Harry described the photo, stating that it showed "the bed where Gary slept and a propane heater, and filth, garbage." He described "more garbage." The State asked Harry if he knew what liquid was in the bottles pictured in the photographs. Harry stated, "I believe that they're urine." Richards's counsel objected. The court sustained this objection.

Richards asserts that his living conditions were not on trial and they did not make it more or less likely that he committed any element of assault against Harry. But Richards's living conditions were the reason that Harry went to Richards's shop to talk to him. The status of Richards's poor living conditions, which required him to pack propane into the shop the previous winter, caused Harry to suggest that Richards move into a trailer. During their discussion about this suggestion, Richards insulted their mother, which led to their argument.

In addition, evidence of Richards's living conditions was relevant to rebut Richards's argument that malice or greed motivated Harry's presence at the shop or that Harry was a trespasser. During closing argument, Richards's counsel stated, "You heard Harry. Counsel says, 'Well, Harry's a credible witness.' Harry doesn't have anything to lose. Well, wait a minute. Harry's got everything to

gain. [Richards] was the guy that was living in the shop, and he's the guy that's not living in there anymore." Also, to support Richards's defense of property claim in his trial brief, Richards stated, "The facts at trial will show that [he] was in rightful possession of his property and used reasonable force to prevent a malicious trespass or other interference with such property rights."

The State also contends that Richards's living conditions were relevant to his motive. It asserts that Richards shot his rifle into the air, in part, because his living conditions made him feel powerless. Although the State advanced this theory during the ER 404(b) hearing, because it did not do so at trial, Harry's trial testimony about Richards's living conditions is not probative of this theory.

Last, Richards claims that evidence of his living conditions was inadmissible under ER 403 because the risk of unfair prejudice outweighed any probative value. But Richards did not object on this basis at trial. Generally, this court does not consider claims of error raised for the first time on appeal.[33] We decline to consider Richards's ER 403 claim.

The trial court did not abuse its discretion by admitting evidence of Richards's living conditions.

---

[33] State v. Guloy, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985); RAP 2.5(a).

## C. Cumulative Error

Richards asserts that cumulatively, the alleged evidentiary errors require a new trial. "The cumulative error doctrine applies 'when there have been several trial errors that standing alone may not be sufficient to justify reversal but when combined may deny a defendant a fair trial.'"[34] The trial court did not abuse its discretion by admitting evidence of Richards's living conditions. It erred only in admitting evidence of the 2007 incident under ER 404(b). And because the trial court's error was harmless, it does not require a new trial.

## Right to a Public Trial

Richards contends that the trial court's three off-the-record sidebars violated his constitutional right to a public trial. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee the accused a right to a public trial.[35] Article I, section 10 of the Washington Constitution mandates that [j]ustice in all cases shall be administered openly," which entitles the public and the press to openly administered justice.[36] Violation of the public trial right is a

---

[34] In re Pers. Restraint of Morris, 176 Wn.2d 157, 172, 288 P.3d 1140 (2012) (quoting State v. Greiff, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)).

[35] Presley v. Georgia, 558 U.S. 209, 212, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010); State v. Bone-Club, 128 Wn.2d 254, 257, 906 P.2d 325 (1995).

[36] Seattle Times Co. v. Ishikawa, 97 Wn.2d 30, 36, 640 P.2d 716 (1982).

structural error that a reviewing court presumes is prejudicial.[37] We review constitutional issues de novo.[38]

To evaluate an alleged public trial right violation, a reviewing court conducts a three-part inquiry: (1) whether the proceeding at issue implicates the public trial right, (2) if so, whether there was a closure, and (3) if there was a closure, whether the closure was justified.[39] The appellant has the burden of proving the first two prongs, and the proponent of the closure carries the third.[40] Richards claims that the sidebars at issue implicate his public trial right. We disagree.

The experience and logic test determines whether the proceeding at issue implicates the public trial right.[41] "The guiding principle is 'whether openness will enhance[ ] both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'"[42] In State v. Smith,[43] our Supreme Court held that "sidebars do not implicate the public trial right." The court reasoned that sidebars "have not historically been open to the public

---

[37] State v. Wise, 176 Wn.2d 1, 16, 288 P.3d 1113 (2012).
[38] State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017).
[39] State v. Smith, 181 Wn.2d 508, 521, 334 P.3d 1049 (2014).
[40] State v. Love, 183 Wn.2d 598, 605, 354 P.3d 841 (2015).
[41] Smith, 181 Wn.2d at 514.
[42] Smith, 181 Wn.2d at 514-15 (alteration in original) (internal quotation marks omitted) (quoting State v. Sublett, 176 Wn.2d 58, 75, 292 P.3d 715 (2012)).
[43] 181 Wn.2d 508, 511, 334 P.3d 1049 (2014).

and . . . allowing public access would play no positive role in the proceeding."[44] The court defined "proper sidebars" as those that are "(1) 'limited in content to their traditional subject areas,' (2) necessary to 'avoid disrupting the flow of trial,' and (3) contemporaneously transcribed or 'promptly memorialized in the record.'"[45] It stated that sidebars "deal with the mundane issues implicating little public interest."[46] It distinguished proper sidebars dealing with issues like evidentiary rulings at issue in Smith from a pretrial suppression hearing.[47] It reasoned, "[E]videntiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness."[48] Proper sidebars deal with issues that are "so devoted to legal 'complexities' as to be 'practically a foreign language.'"[49] The court also noted that the sidebars at issue were contemporaneously memorialized and recorded, which negated any concern about secrecy.[50]

Richards relies on State v. Whitlock[51] to show that the challenged sidebars were improper, so the public trial right attaches. Whitlock involved a ten-minute

---

[44] Smith, 181 Wn.2d at 511.
[45] State v. Whitlock, 188 Wn.2d 511, 519, 396 P.3d 310 (2017) (internal quotation marks omitted) (quoting Smith, 181 Wn.2d at 519).
[46] Smith, 181 Wn.2d at 516.
[47] Smith, 181 Wn.2d at 516-19.
[48] Smith, 181 Wn.2d at 518.
[49] Whitlock, 188 Wn.2d at 522 (quoting Smith, 181 Wn.2d at 519).
[50] Smith, 181 Wn.2d at 518.
[51] 188 Wn.2d 511, 396 P.3d 310 (2017).

discussion in chambers about the scope of cross-examination related to "informants and their motives to curry favor with authority."[52] Two hours after this discussion and outside of the presence of the defendants, the court and counsel placed on the record a description of the in-chambers proceeding.[53] Our Supreme Court held that this discussion violated the defendants' public trial right because it was in-chambers, meaning it was closed, it was not recorded or promptly memorialized, and it concerned issues easily accessible to the public.[54]

Here, the first sidebar that Richards challenges occurred during Harry's testimony about Richards's living conditions. Richards's defense counsel objected "to the relevance of this testimony and the opinion evidence as to capability." The trial judge told counsel to "[c]ome up" to the bench. The court then overruled the objection after a "Bench Conference, off the record and out of the hearing of the jury." Another sidebar occurred after the State's hearsay objection during Richards's trial counsel's cross-examination of Deputy Haugen about Harry's description of the incident. The trial court sustained the objection after holding another "Bench Conference, off the record and out of the hearing of the jury." The third sidebar also occurred during Richards's trial counsel's cross-examination of Haugen when counsel was questioning Haugen about Richards's description of the incident. Without any objection, the State asked, "Your Honor,

---

[52] Whitlock, 188 Wn.2d at 516, 523.
[53] Whitlock, 188 Wn.2d at 516.
[54] Whitlock, 188 Wn.2d at 522-23.

can we approach?" After another "Bench Conference, off the record and out of the hearing of the jury," the trial court stated, "The objection is overruled." The parties do not dispute that these sidebars were not memorialized.

Richards claims that the public trial right attached to the first two sidebars because his living conditions and the scope of Haugen's cross-examination are publically accessible topics and worthy of public scrutiny. He maintains that because the State did not object before asking for the third sidebar, he "can only speculate that the State might have lodged a rule of completeness objection under ER 106," which would have benefited from public oversight.

Because these sidebars were not contemporaneously transcribed or promptly memorialized in the record, they were improper sidebars under Smith. But consistent with Smith, the public trial right generally does not attach to discussions about evidentiary rulings because they do not implicate the concerns that the right is meant to protect. As stated above, the first sidebar involved a relevancy objection and the second involved a hearsay objection. Both of these sidebars involved evidentiary rulings, a subject of traditional sidebars to which the public trial right does not attach.

In addition, the record does not support that the third sidebar implicated Richards's trial right because the State does not state the nature of its request to approach the bench. And as Richards speculates, because the State asked to

approach during Haugen's testimony about Richards's statement to police, it was likely an evidentiary objection. These off-the-record discussions about evidentiary matters do not implicate concerns about fairness that underpin the public trial right. So, the public trial right does not attach to them. Richards does not show that these improper sidebars violated his right to a public trial.

## Firearm Sentencing Enhancement

Last, Richards contends that the trial court mistakenly believed that it did not have discretion to impose an exceptional sentence downward from the required term of confinement for a firearm enhancement, which requires remand for resentencing. We disagree.

This court reviews questions of law de novo.[55]

RCW 9.94A.533(3)(e) states firearm enhancements are "mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions, including other firearm or deadly weapon enhancements." In State v. Brown,[56] our Supreme Court held that this statutory language deprives sentencing courts of the discretion to impose an exceptional sentence with regard to firearm enhancements. Richards asserts that for the reasons Justice Madsen asserts in her concurring opinion in State v. Houston-Sconiers,[57] this

---

[55] State v. Reeves, 184 Wn. App. 154, 158, 336 P.3d 105 (2014).
[56] 139 Wn.2d 20, 21, 29, 983 P.2d 608 (1999), overruled in part by State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017).
[57] 188 Wn.2d 1, 391 P.3d 409 (2017).

court should reexamine our Supreme Court's holding in Brown. In Houston-Sconiers, our Supreme Court held,

> [S]entencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system . . . . To the extent our state statutes have been interpreted to bar such discretion with regard to juveniles, they are overruled. Trial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable SRA [Sentencing Reform Act of 1981, ch. 9.94A RCW] range and/or sentence enhancements.[58]

In her concurring opinion, Justice Madsen stated, "I would resolve this case by holding that sentencing courts have the discretion to depart from the mandatory firearm enhancements when imposing exceptional sentences."[59]

First, Houston-Sconiers overruled the holding in Brown for juveniles only. Richards is a 66-year-old man who is subject to the Brown decision. The trial court correctly stated that it did not have discretion to impose an exceptional sentence downward from the term of confinement the firearm enhancement requires. Second, "[O]nce [our Supreme Court] has decided an issue of state law, that interpretation is binding on all lower courts until it is overruled by [the Supreme Court]."[60] This court does not have the authority to reexamine Brown. We reject Richards's claim.

---

[58] Houston-Sconiers, 188 Wn.2d at 21.
[59] Houston-Sconiers, 188 Wn.2d at 40 (Madsen, J., concurring).
[60] State v. Gore, 101 Wn.2d 481, 487, 681 P.2d 227 (1984).

Statement of Additional Grounds for Review

Richards submitted a statement of additional grounds for review. Because he asserts no legal grounds for his appeal that he did not raise in his appellate brief,[61] we decline to review it.

CONCLUSION

We affirm. Richards does not show that any evidentiary errors caused prejudice. In addition, because the public trial right did not attach to the sidebars at issue, these sidebars did not violate Richards's public trial right. And the trial court correctly stated that it did not have discretion to impose an exceptional sentence for the firearm enhancement.

_Leach, J._

WE CONCUR:

---

[61] RAP 10.10(a).