IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In re Personal Restraint of: | ) | No. 78973-2-I |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| RONALD GARTH PARKER | ) | |
| | ) | |
| | ) | FILED: February 10, 2020 |

ANDRUS, J – In his personal restraint petition, Ronald Parker challenges his convictions for child rape and child molestation.[1] Parker argues that his trial counsel was ineffective in failing to investigate what he now claims is exculpatory evidence, and his appellate counsel was ineffective in failing to challenge the constitutionality of unrecorded sidebars during trial. Because Parker has failed to establish deficiencies in his representation, we deny his personal restraint petition.

## FACTS

Shannon Dearinger and her four children, Adam MacCurdy (son, age 19), R.M. (daughter, age 13), J.M. (son, age 11), and A.M. (daughter, age 8), moved in with Parker in September 2012. State v. Parker, 199 Wash. App. 1001, *1, 2017 WL 2117034 (2017). There was significant discord between Parker and Dearinger's children. Id. R.M. was particularly unhappy living with Parker, writing

---

[1] This court affirmed his convictions and sentence in State v. Parker, No. 74030-0-I (Wash. Ct. App. May 15, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/740300.pdf, review denied, 189 Wn.2d 1013, 402 P.3d 824 (2017).

in her journal that she hated him and wanted to induce her mother to leave Parker. Id.

In June 2014, A.M. told R.M. that Parker had touched her inappropriately. A.M.—with the encouragement of both R.M. and J.M.—told her mother that Parker had touched her. Dearinger removed her children from the house and reported the abuse to the police. Id. Soon after, a child interview specialist interviewed A.M. about her allegations. Id. As a result, Parker was charged with four counts of rape of a child in the first degree and four counts of child molestation in the first degree. Id.

At trial, A.M. testified, consistent with the forensic interview, that Parker molested her while they lay next to each other on a blue couch watching television in Parker's living room. Dearinger, J.M., and R.M. testified that the family watched television together at least once a week and that Parker and A.M. were often on the couch together covered by a blanket.

Parker argued at trial that R.M. and A.M. colluded to fabricate the allegations because they did not like living so far from their friends, did not like Parker, did not like doing chores, and wanted to leave "by any means necessary." Parker's trial counsel spent a significant amount of time cross examining R.M. regarding the animosity she felt toward Parker and the entries in her journal where she documented her intent to lie to her mother about Parker in order to cause them to break up.

The jury convicted Parker of four counts of first degree rape of a child, three counts of first degree child molestation, and one count of attempted child molestation. Parker, 199 Wn. App. at *1.

On appeal, Parker challenged the impartiality of his jury, the admissibility of A.M.'s recorded forensic interview, the exclusion of R.M.'s journal, and prosecutorial statements during closing arguments. This court rejected Parker's arguments and affirmed Parker's convictions and sentence. Id. at *7. Our Supreme Court denied review. State v. Parker, 189 Wn.2d 1013, 402 P.3d 824 (2017).

Parker now asserts that his legal representation at trial and on appeal was deficient. Parker argues his trial counsel failed to investigate whether the blue couch on which A.M. testified the molestation occurred was actually in the living room at the time of the charged crimes. He also contends trial counsel failed to uncover the fact that A.M. had watched a cartoon television show in which children reported false allegations of sexual abuse to rid themselves of adults they did not like. Finally, Parker maintains that appellate counsel was ineffective by failing to argue that the trial court violated his constitutional right to a public trial when it conducted off-the-record sidebar conferences.

## STANDARD OF REVIEW

Parker has raised only constitutional errors in his petition—ineffective assistance of counsel at trial and ineffective assistance of counsel on appeal. To obtain relief in a collateral attack based on a constitutional error, a petitioner must demonstrate by a preponderance of evidence that he was actually and

substantially prejudiced by the alleged error. In re Pers. Restraint of Coggin, 182 Wn.2d 115, 119, 340 P.3d 810 (2014). A petitioner seeking a reference hearing must offer facts underlying the claim and evidence to support the factual allegations. In re Pers. Restraint of Yates, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). A petitioner must "demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." In re Pers. Restraint of Ruiz-Sanabria, 184 Wn.2d 632, 636, 362 P.3d 758 (2015). "[B]are assertions and conclusory allegations are insufficient." Id.

Under the Sixth Amendment to the United States Constitution and article I section 22 of the Washington State Constitution, a defendant in a criminal proceeding is guaranteed the right to effective assistance of counsel. See In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004). To successfully challenge the effectiveness of their assistance of counsel, a petitioner must satisfy a two-part test. Id. The petitioner must show that "(1) defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." State v. McFarland, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). "The United States Supreme Court has defined reasonable probability as 'a probability sufficient to undermine confidence in the outcome.'" Davis, 152 Wn.2d at 673 (quoting Strickland v. Washington, 466 U.S. 668, 669, 104 S. Ct. 2052, 2056, 80 L. Ed. 2d 674 (1984)). A reviewing court

"approaches an ineffective assistance of counsel argument with a strong presumption that counsel's representation was effective." Id.; see also McFarland, 127 Wn.2d at 335.

## ANALYSIS

Parker raises three challenges to his legal representation. First, Parker contends that his trial counsel failed to investigate whether the blue couch, on which A.M. testified the events occurred, was actually in the living room when Parker allegedly molested her. Second, Parker argues that his trial counsel failed to investigate whether A.M. and R.M. had watched an episode of the television show, South Park, in which one character instructed another on how to falsify incidents of "molestering" to get rid of adults they did not like. Finally, Parker contends that his appellate counsel was ineffective by not arguing Parker's public trial rights had been violated when the trial court conducted off-the-record sidebar conferences.

### 1. The Blue Couch

A.M. testified that each time Parker molested her, they were lying down on "Ron's couch" in the living room watching television. While it was undisputed that "Ron's couch" was the "blue couch," Parker now asserts that the blue couch was in the dining room for the majority of the time A.M. lived in the home and that his trial counsel was ineffective in failing to investigate where the blue couch was when the alleged molestation occurred. Parker contends that had such an investigation occurred, it would have undermined A.M.'s credibility.

To support his blue couch claim, Parker submitted declarations from his mother, Judy Burke, a friend, Alf Vatne, and A.M.'s teenage brother, Adam MacCurdy. Burke testified the blue couch was in Parker's dining room and not within eyesight of the television until April or May of 2014, at which point it was moved to the living room. Vatne and MacCurdy similarly testified that the blue couch was in the dining room for "the vast majority of the time frame alleged in the complaint." Each witness declared that the blue couch was moved from the dining room to the living room at some point, possibly in the spring of 2014. Parker contends that it would have been impossible for him to see the television while lying on the blue couch with A.M. before the spring of 2014. He argues this evidence proves A.M.'s allegations are untrue.

A defense attorney has a duty to conduct a reasonable factual investigation to make informed decisions about how best to represent the client. Davis, 152 Wn. 2d at 721. There is a strong presumption that the conduct of defense counsel falls under the "wide range of reasonable professional assistance." Id. "An attorney's action or inaction must be examined according to what was known and reasonable at the time the attorney made his choices." Id. at 722.

In this case, Parker does not argue that his trial counsel failed to interview key material witnesses before trial. Indeed, trial counsel called Burke, Vatne and MacCurdy to testify for Parker. None of these witnesses contend that they ever told Parker's trial counsel about the blue couch's location in the dining room. Parker, who also testified at trial and presumably has personal knowledge of when his couch was in the living room, has provided no evidence that he or anyone else

- 6 -

informed trial counsel that the blue couch was not moved to the living room until the spring of 2014. And there is no evidence that trial counsel knew, but neglected to elicit, this evidence during trial. In fact, during oral argument on this petition, Parker's counsel conceded that Parker probably did not tell his trial counsel that the blue couch had been moved.

Instead, Parker merely asserts, without evidence, that his trial counsel had an obligation to investigate "all possible defenses." But Parker's trial counsel clearly investigated the defense of fabrication. Counsel effectively cross examined R.M. about her "five point plan" to force her mother to leave Parker. R.M. admitted that she wrote "I hate Ron" in bold letters in her journal. And counsel attempted to get R.M. to admit that she put A.M. up to making false allegations about Parker.

While facts relating to the location of the blue couch would have furthered Parker's defense, Parker cites no authority for the proposition that an attorney is ineffective for failing to discover facts about which that attorney is never put on notice. Given that trial counsel had access to Parker and each of the declarants, any contention that further investigation would have uncovered this exculpatory evidence is speculative at best.

Moreover, even if a petitioner can show that exculpatory evidence unknown to trial counsel would have been uncovered by further investigation or interview, we must still consider whether counsel's deficient performance actually and substantially prejudiced the petitioner. Davis, 152 Wn.2d at 739. In evaluating prejudice, ineffective assistance of counsel claims based on a duty to investigate must be considered in light of the strength of the government's case. Id.

Here, the State charged Parker with four counts of child rape and four counts of molestation between August 17, 2012, when A.M. moved into Parker's home, and June 16, 2014, when A.M. was removed from his home. A.M. could not recall at trial exactly when the instances of molestation occurred, but she was able to describe multiple incidents all occurring on the blue couch. R.M. testified that A.M. disclosed the molestation to her on the night before the last day of school in June. Dearinger testified she then reported the crimes to the police in June 2014. If Parker relocated the blue couch into the living room in April 2014, as Burke now testifies, and A.M. and Parker were together on that couch frequently, as A.M. testified, there was still a significant amount of time during which the molestation could have in fact occurred. The new evidence does not make the rapes or molestation an impossibility.

And the State's case was otherwise a strong one. R.M. corroborated the blue couch's location and observed Parker and A.M. lying together on the couch covered by a blanket. J.M. also testified that he saw A.M. and Parker lying together on their sides under a blanket while watching television. Dearinger identified the blue couch as being located in the living room and recalled seeing A.M. and Parker together on that couch. She testified that they watched television as a family at least once a week, if not multiple times each week, and that Parker often asked A.M. to sit with him on his couch. Dearinger reported that when A.M. disclosed the molestation to her, A.M. looked serious and was wringing her fingers. A.M.'s reports of the molestation to her mother were consistent with her testimony at trial and with the information she provided the child forensic interviewer. When

Dearinger confronted Parker, he initially denied it but then said "like, well, maybe when I was sleeping" it happened.

In light of the record before us, Parker has not carried his burden of establishing that his trial counsel was ineffective in failing to discover that Parker's blue couch was in the dining room until April or May of 2014 or that the failure to discover this evidence actually and substantially prejudiced Parker.

2.    The South Park Episode

Parker contends that his trial counsel was also ineffective in failing to discover that A.M. and R.M. repeatedly watched and may have been influenced by an episode of the cartoon television show South Park entitled "The Wacky Molestation Adventure." In that episode, a young character learns that if he reports false allegations of "molestering," he can rid himself of adults he does not like. Parker argues the failure to discover this fact adversely impacted him because it would have supported the defense theory that A.M. and R.M. fabricated the allegations as a way to get rid of Parker.

Parker has presented MacCurdy's declaration to substantiate this claim. But as we have indicated, an attorney must be on notice of some allegation or fact in order to determine whether to investigate it. See Davis, 152 Wn. 2d at 722. MacCurdy, whom trial counsel called as a defense witness at trial, does not allege that he told Parker's trial counsel about the South Park episode. There is certainly no declaration from Parker's trial counsel to support the contention that he was made aware of the fact and neglected to investigate it. Because the record does not indicate that Parker's trial counsel was ever made aware of this episode of

South Park, it cannot be said that he was ineffective for not discovering it. While the evidence would have been relevant, had MacCurdy actually told trial counsel about it, there is simply no basis for us to conclude that Parker's trial counsel had notice that either A.M. or R.M. knew of or had watched this show. Without this evidence, Parker has not established a prima facie case of ineffective assistance of counsel warranting a reference hearing or the reversal of his conviction.

3.    Public Trial Right

Finally, Parker argues that his appellate counsel was ineffective for failing to argue that his constitutional right to a public trial was violated when the trial conducted off-the-record sidebar conferences. A petitioner raising ineffective assistance on appeal must show that the legal issue that counsel failed to raise had merit and must then show that he was prejudiced by appellate counsel's failure to raise the issue. In re Pers. Restraint of Dalluge, 152 Wn.2d 772, 778, 100 P.3d 279 (2004).

Article I, section 22 of the Washington State Constitution and the Sixth Amendment to the United States Constitution guarantee a "public trial by an impartial jury." But the public trial right is not absolute. State v. Wise, 176 Wn.2d 1, 9, 288 P.3d 1113 (2012). Our courts use a three-step framework to determine whether a defendant's public trial rights have been violated. State v. Smith, 181 Wn.2d 508, 514, 334 P.3d 1049 (2014). First, we ask whether the proceeding implicates the public trial right. Id. Second, if the right attaches, we then ask whether the courtroom was closed. Id. at 520. Third, if the courtroom was closed, we ask whether the closure was justified. Id.

Our Supreme Court has adopted the experience and logic test to determine whether a proceeding implicates the public trial right, the first prong of the three step framework. The first part of the test, the experience prong, "asks whether the place and process have historically been open to the press and general public." Id. at 514 (quoting State v. Sublett, 176 Wn.2d 58, 72, 292 P.3d 715 (2012)). The second part of the test, the logic prong, "asks whether public access plays a significant positive role in the functioning of the particular process in question." Id.

In Smith, our Supreme Court held that the right to a public trial does not extend to sidebar conferences because "[s]idebar conferences have historically occurred outside the view of the public" and "deal with mundane issues implicating little public interest." Id. at 515-16. In discussing the logic prong, the court noted that "evidentiary rulings that are the subject of traditional sidebars do not invoke any of the concerns the public trial right is meant to address regarding perjury, transparency, or the appearance of fairness." Id. at 518. It reasoned that evidentiary rulings, exclusively within the province of the trial judge, do not aid the public and "allowing the public to 'intrude on the huddle'" would add nothing positive to sidebars in our courts. Id.

Here, Parker has not demonstrated that the sidebar conferences extended beyond "mundane issues implicating little public interest." The sidebars occurred: during voir dire, before and during A.M.'s cross-examination, before R.M.'s direct examination, during J.M.'s testimony, during Dearinger's testimony, before the testimony of the child interview specialist, during MacCurdy's testimony, after Burke's testimony, after Vatne's direct examination, and during Parker's testimony.

Parker concedes that many of these sidebar conferences occurred to discuss scheduling or were in response to an evidentiary objection. He has presented no evidence that the sidebars involved anything other than such routine matters. Although the trial court certainly should have recorded the side bars or memorialized them after-the-fact under Smith, it does not follow that the trial court violated Parker's public trial right by not doing so. Based on this record, the sidebar conferences did not implicate Parker's public trial rights. Because this claim lacks merit, Parker's appellate counsel was not ineffective in deciding to forego this issue on direct appeal.

We deny Parker's personal restraint petition.

WE CONCUR:

Andrus, J.

Dwyer, J.